UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION



CAROL SHULER, ROGER SHULER )
    Plaintiffs )
    Pro Se )
v. )
     )
JIM ARNOTT, individually and in his official capacity )
as Greene Co. sheriff; TRENT COWHERD )
CONSTRUCTION; TRENT COWHERD; )
LOWTHER JOHNSON LAW FIRM; CRAIG )
LOWTHER; GREGORY LULICH; JOHN W. )
HOUSLEY; DAVID SHULER; )
PAUL SHULER;  DON SCHLUETER; )
BURRELL HEALTH; LINDA K. THOMAS; )
KATHRYN MAYS; JOSHUA DAVIS; C.J. DAVIS; )
CHRISTIAN CONRAD, individually and in his official )
 capacity as a Greene Co deputy; SCOTT HARRISON, )
individually and in his official capacity as a Greene Co. )
deputy; DEBI WADE, individually and in her official )
capacity as a Greene Co. deputy; JEREMY LYNN, )
individually and in his official capacity as a Greene Co. )
deputy; DEFENDANTS (UNKNOWN), who )
work with the Greene Co. Sheriff's Office; )
SPARTAN VALUE INVESTORS; BIRMINGHAM )
WATER WORKS; DEFENDANTS (CURRENTLY )
 UNKNOWN) who work on eviction crew for Cowherd; )
DEFENDANTS (CURRENTLY UNKNOWN) from )
Alabama, who conspired to have the Shulers abused )
and terrorized in Missouri, just as they were )
in Alabama; Greene County, MO )
    Defendants

CIVIL ACTION NO.

JURY DEMAND

VERIFIED COMPLAINT

## FIRST AMENDED COMPLAINT

1.  Plaintiffs Roger Shuler and Carol Shuler ("Shulers") bring this action for declaratory

     judgment, equitable relief, and money damages, instituted to secure the protection of and

     to redress unlawful actions against the plaintiffs. The suit is brought to secure the

protection of and to redress the deprivation of rights secured by Title VII of the Civil

Rights Act of 1964, as amended, the First Amendment through 42 U.S. Code 1983; the

Fourth Amendment through 42 U.S. Code 1983, the Fourteenth Amendment through 42

U.S. Code 1983, and the laws of the State of Missouri. The plaintiffs seek compensatory

and punitive damages and request a jury trial. Prior to trial, the Shulers intend to amend

this complaint, pursuant to FRCP 15, to include defendants with the Greene County

Sheriff's Office and Trent Cowherd Construction, whose names currently are unknown.

## JURISDICTION AND VENUE

2. The unlawful actions alleged herein below were committed by the defendants within

Greene County, Missouri. Plaintiffs were residents of Greene County, Missouri, at the

time of these unlawful actions. Jurisdiction in this Court is conferred by 28 USC 1331,

1343.

## PARTIES

3. Roger Shuler and Carol Shuler ("Shulers") currently reside in Springfield, Missouri.

4. Defendant Jim Arnott is the sheriff of Greene County, Missouri, and served in that

position at all times material to this action. Defendant Arnott is a state actor for purposes

of 42 U.S. Code 1983. Defendant Arnott is sued individually pursuant to 1983 for

violations of the First, Fourth, and Fourteenth Amendments as further set out herein.

5. Defendant Trent Cowherd Construction is a development and leasing company in

Springfield, Missouri.

6. Defendant Trent Cowherd is president of Trent Cowherd Construction, and based on information and belief, resides in Springfield, Missouri.

7. Defendant Lowther Johnson is a law firm in Springfield, Missouri.

8. Defendant Craig Lowther is an attorney in Springfield, Missouri.

9. Defendant Gregory Lulich, at all times pertinent to this lawsuit, was an attorney at the Lowther Johnson firm in Springfield, Missouri.

10. Defendant John W. Housley, at all times pertinent to this lawsuit, was an attorney at Lowther Johnson. Based on statements from deputies on the scene, Housley serves in an advisory role to the Greene County Sheriff's Office, and he gave the go-ahead to proceed with Shulers' eviction, even though there was no final eviction order from a court.

11. Defendant David Shuler is an attorney in Springfield, Missouri, and is Roger Shuler's brother.

12. Defendant Paul Shuler is a resident of Springfield, Missouri, and is Roger Shuler's brother.

13. Defendant Don Schlueter is a resident of Springfield, Missouri.

14. Defendant Linda Thomas is an attorney in Springfield, MO.

15. Defendant Burrell Health is a company providing mental-health services, based in Springfield, Missouri.

16. Defendant Kathryn Mays is a social worker with Burrell.

17. Defendant Joshua Davis was a social worker at Burrell during all times pertinent to this action.

18. Defendant C.J. Davis is CEO of Burrell.

19. Defendant Christian Conrad is a deputy with the Greene County Sheriff's Office and has served in that position at all times material to this action. Defendant Conrad is a state actor for purposes of 42 U.S. Code 1983. Defendant Conrad is sued individually pursuant to 1983 for violations of the First, Fourth, and Fourteenth Amendments as further set out herein.

20. Defendant Scott Harrison is a deputy with the Greene County Sheriff's Office and has served in that position at all times material to this action. Defendant Harrison is a state actor for purposes of 42 U.S. Code 1983. Defendant Harrison is sued individually pursuant to 1983 for violations of the First, Fourth, and Fourteenth Amendments as further set out herein.

21. Defendant Debi Wade is a deputy with the Greene County Sheriff's Office and has served in that position at all times material to this action. Defendant Wade is a state actor for purposes of 42 U.S. Code 1983. Defendant Wade is sued individually pursuant to 1983 for violations of the First, Fourth, and Fourteenth Amendments as further set out herein.

22. Defendant Jeremy Lynn is a deputy with the Greene County Sheriff's Office and has served in that position at all times material to this action. Defendant Lynn is a state actor for purposes of 42 U.S. Code 1983. Defendant Lynn is sued individually pursuant to 1983 for violations of the First, Fourth, and Fourteenth Amendments as further set out herein.

23. Defendant Spartan Value Investors is a real-estate investment company in Birmingham, AL.

24. Defendant Birmingham Water Works is a utility company in Birmingham, AL.

25. Defendant Greene County, MO, is a county in SW Missouri, with its county seat in Springfield.

## FACTUAL ALLEGATIONS

26. In July 2014, the Shulers signed a 13-month lease to live in a duplex apartment, owned by Cowherd Construction, at 4020 S. Fort Ave. in Springfield, Missouri.

27. The Shulers had lived as a married couple for 27 years in Birmingham, Alabama, but wound up in Springfield (where Roger Shuler grew up) after political forces in Alabama caused Roger Shuler to be incarcerated for five months because of allegedly defamatory material on his blog, *Legal Schnauzer*, which he has written since summer 2007. Under more than 200 years of First Amendment law, a person cannot be subject to a preliminary injunction (an unlawful prior restraint on free speech) and incarceration in a defamation case, but Alabama deputies essentially kidnapped Roger Shuler inside his own home (showing no warrant, not stating they had a warrant, not stating their reasons for being on the premises) and took him to jail. The case received international media attention, including an article in *The New York Times*.

28. Just as Roger Shuler was released from jail, in March 2014, the Shulers received word that their home of 25 years in Birmingham was going into foreclosure. The Shulers had known for several months about issues with their mortgage, but when Roger Shuler was unlawfully incarcerated for five months, they were unable to do anything about them. They wound up the victims of a wrongful foreclosure and were on the verge of homelessness. That was another reason for their move to Springfield.

29. Don Schlueter, a friend of Roger's from their days at the University of Missouri, came to Birmingham for a visit, stating that he wanted to help an "old friend." Schlueter lives in Springfield, MO, and convinced Roger it would be good to return to his hometown for a visit, to see family and clear his head. The plan was for Roger to return to Birmingham after a few days in Springfield.

30. While in Springfield, Roger received an urgent call from his wife, Carol, saying that Spartan Value Investors – the company that apparently had bought their home at foreclosure – had caused the water to their Birmingham home to be shut off and was threatening to shut off other utilities. This, of course, is unlawful, but Roger Shuler felt powerless to do anything about it.

31. Under the duress that Carol and the couple's pets would have no utilities in Birmingham, the Shulers decided it would be best for Carol and their pets to join Roger in Springfield. With the help of a family member and a couple of friends, Carol gathered the Shulers' belongings and moved to Springfield, vacating the house in Birmingham.

32. Before the decision for Carol to move to Springfield, David Shuler and Don Schlueter encouraged Roger to seek psychiatric treatment at Cox North Medical Center. David stated that he had a friend with connections to the hospital. Roger, struggling with a number of physical and emotional issues after the jail experience and foreclosure, agreed to be seen at Cox and spent six days in the adult psychiatric unit. He was placed back on anti-depression and anti-anxiety medications he had been without since his arrest more than eight months earlier. Physicians diagnosed Roger with post-traumatic stress disorder (PTSD) and said his brain was like a car battery that had run out of juice.

33. Once Carol arrived in Springfield, she and Roger received treatment at Burrell Health Services, and both were diagnosed with PTSD.

34. David Shuler apparently heard about the availability of a 2 BR duplex with Cowherd Construction, and Gondy Shuler (Roger's mother, now deceased) agreed to co-sign the lease and pay Roger and Carol's rent for the first year – with Roger and Carol handling other expenses and taking over rent when the lease went month to month after one year. Roger signed the lease in Springfield, while Carol still was in Birmingham. Roger told the Cowherd representative that he was married, had been for 27 years, and his wife would be living with him at the apartment. The Cowherd rep indicated that would be fine, but she failed to put Carol's name on the lease.

35. Roger and Carol never were given money to pay their own rent, and they never saw their rent being paid. To their knowledge, Gondy Shuler went to the Cowherd office each month to timely pay the rent. Gondy Shuler stated to Roger and Carol on several occasions that she had told Cowherd personnel that Roger and Carol would not be able to pay the rent once the one year was up and could not qualify on their own to rent the apartment. Roger and Carol could not understand why Gondy Shuler felt compelled to share this information with Cowherd. For one thing, it wasn't true; Roger and Carol were able and willing to pick up rent payments when the lease went month to month, and that was their intention.

36. While Roger Shuler was in jail, Carol was able to publish several posts on *Legal Schnauzer,* and that's how the world came to learn that a U.S. journalist had been incarcerated in Alabama. Upon Roger's release, the blog mostly went dormant as the Shulers concentrated on trying to save their house from foreclosure. Once the Shulers got

settled in Springfield, Roger decided to resume blogging about political and legal corruption in Alabama – mainly because new developments arose in several stories he either had broken or reported.

37. When Roger resumed blogging, Don Schlueter berated him about it. In fact, Schlueter berated Roger on this subject 4-5 times over several months. Roger failed to understand why a blog about issues in Alabama would be any of Don Schlueter's concern.

38. In June 2015, David Shuler stated in an email to Roger that Cowherd was willing to extend the lease without a cosigner, but Roger and Carol would have to execute a new lease. Roger and Carol, of course, already had a lease, and it was due to go month to month – and there was no provision in the lease that said a new lease would be required when/if the cosigner wanted out. Roger and Carol never heard anything from Cowherd about this issue, just the email from David Shuler.

39. On 7/2/15, the Shulers had a notice taped to their door that they were to vacate the apartment, signed by Cowherd property managers Brittani and Megan. They did not provide 30 days' notice, as required in the lease. They also cited no grounds, considering that the Shulers had been model tenants, and their rent always had been paid on time. When Roger called Brittani and asked about the notice, she said it was posted because Roger and Carol had not qualified on their own, without a cosigner. When Roger noted that the lease did not call for a tenant to qualify on his own when a cosigner wanted off the lease, Brittani said, "Well, we don't have to lease to you, and we're choosing not to lease to you." Roger noted that Cowherd was violating the lease, and the Shulers would challenge any effort to unlawfully evict them.

40. In August 2015, the Shulers received notice that Cowherd had filed a rent and possession lawsuit against them. The Shulers filed a counterclaim for breach of contract, and the case went before Judge Kelley Rose Halford on 8/27/15. On 8/28/15, the Shulers received a Notice to Vacate/Landlord execution which was signed by Cowherd attorney Craig Lowther, but not by a judge. It said eviction was scheduled for 9/9/15.

41. In an order entered on 8/31/15, Halford found for Cowherd on rent and possession and scheduled the Shulers' counterclaim for hearing on 10/1/15. That meant the Shulers would have to move, even if they prevailed on the breach of contract claim. The Halford order was listed on the docket as "interlocutory," not final.

42. On 9/2/15, one week before the scheduled eviction, David Shuler sent an email to Roger, stating that Deputy Scott Harrison, of the Greene County Sheriff's Office, had contacted him and said a dispatcher had reported that Roger called 911 and threatened to shoot anyone who attempted to evict the Shulers. Strangely, David Shuler asked Roger not to respond to this outrageous and baseless allegation. Roger, however, did respond and stated he had never made any such threat or any such phone call – and had never called 911 about any matter in his life.

43. Where did this false notion come from that Roger Shuler had called 911 and threatened to shoot officers who might attempt to evict the Shulers? Well, it came from Burrell Behavioral Health, where Roger and Carol had sought medical treatment. On 8/12/15, Burrell employees Joshua Davis and Kathryn Mays, supposedly at the urging of an unnamed supervisor, called 911 and claimed they had a "duty to warn" that Roger Shuler had threatened to shoot officers in any attempted eviction and that he had a gun. The Shulers have obtained a copy of the 911 call, and Davis/Mays admit the story about a

"threat" came from Roger Shuler's relatives – most likely, from David Shuler – and Burrell personnel spoke with him even though they did not have a release to do so. Davis/Mays also state they made a hotline call to Missouri Senior Services, based on David Shuler's false information and never attempted to investigate the matter, as required by Missouri law for a third-party complaint. In fact, Roger Shuler never made any such threat, never discussed such matters with family members, and has never owned a gun. Kathryn Mays claims in the 911 call that Roger made such a threat during a session with nurse practitioner Matt Charles, but Charles' medical notes (which the Shulers have obtained) show no reference to a threat of any kind. C.J. Davis, Burrell CEO, either was in on the hoax call or failed to ensure that his employees were properly trained and supervised.

44. On or about 9/2/15, Don Schlueter visited the Shulers' apartment (uninvited) and encouraged them to vacate. The conversation quickly deteriorated into the familiar pattern of Schlueter berating Roger or Carol (or, in this case, both). The Shulers tried to explain that Cowherd was violating its own lease, and they had a 10-day window to file a notice of appeal of the trial court's ruling, which would put a stay on execution. At one point, Schlueter became so angry that he stood up and started to stomp out. The Shulers made it clear they intended to pursue their right to appeal.

45. The Shulers timely filed a notice of appeal, with payment of proper fees, on 9/8/15 and notified all attorneys in the case of the appeal and stay. David Shuler was one of the attorneys, representing Gondy Shuler, who had been named (with no basis) in Cowherd's lawsuit.

46. At about 2 p.m. on 9/9/15, the Shulers heard a disturbance outside their apartment. Carol Shuler went to the door to look out the peephole, and as she did, an officer burst through the front door, followed by 6-7 more officers, including Sheriff Jim Arnott himself. One officer, Scott Harrison, pointed an assault rifle at Roger Shuler's head. Carol was slammed against the wall when the door was thrown open. Officer Jeremy Lynn handcuffed her, and someone slammed her head into the wall 3-4 more times as cuffs were being placed on her. Arnott placed handcuffs on Roger, and both Shulers were led outside and told to sit on the grass. Officers told them that Carol could go in and retrieve personal items, and when she was finished, Roger could do the same. When Roger asked about all the officers and weaponry, several officers said it was because of the threatening 911 call, which Roger Shuler never made. When Roger tried to explain to Arnott that a notice of appeal had been filed, meaning execution had been stayed and the officers had no lawful grounds to be there, the sheriff merely shrugged. Arnott said he had a court order, and when Roger asked to see it, Arnott said it was in his vehicle. The sheriff said he would show Roger later, but that never happened. Defendant John W. Housley apparently gave the go-ahead to proceed with unlawful eviction.

47. Officers changed their mind and told Roger he would not be allowed to retrieve items, and they told him to sit in the Shulers' car, parked in the driveway. Carol came out of the garage to put some items in the trunk and headed back toward the front door to get more, as she was told she could do. As Carol walked up the sidewalk, officers Debi Wade and Scott Harrison blocked her path on the front porch. An unknown officer approached her from behind – a Probable Cause Statement seems to ID him as Lt. Christian Conrad, but the Shulers are not certain about that – grabbed Carol and slammed her butt-first to the

ground, hard enough to possibly cause a concussion, especially since Carol's head had been slammed into the wall multiple times already. While Carol was seated on the ground, Conrad (?) grabbed both her arms and violently yanked them in an upward and backward position, putting her in handcuffs. Roger saw all of this from the driver's seat in the car, about 15 feet away. Arnott was about five feet away, just off the sidewalk, as one of his officers brutalized Carol, and he pointed at her and said, "She assaulted a police officer."

48. Carol was placed in the back of a squad car, with Deputy Harrison at the wheel. Roger figured she was being taken to jail, and in the chaos, he could not remember where the jail was. He tried to follow the squad car, but officers blocked his way. It was a hot afternoon – and Roger and the Shulers' cat, Baxter, now were homeless, and they did not know what was being done with Carol. Roger drove Baxter to Fassnight Park, trying to find shade to keep the little cat cool. At about 5 p.m., Roger drove back to Fort, where the Shulers belongings were being placed on the curb. A member of the Cowherd eviction crew told Roger he could not stay there. Later that evening, Roger learned the likely reason he was told that. A neighbor, Fred Jones, said he watched members of the Cowherd crew place some of the Shulers' belongings in their personal vehicles and drive away. Roger's presence earlier apparently posed problems for a planned theft operation.

49. Roger finally remembered that the jail was on Boonville. He drove in that direction and stopped at a bail-bonds business to see if he could get word on Carol. Well into the night, records kept showing that she was being booked. Roger drove back to Fort, where he saw Don Schlueter and his wife, Bonnie, plus several neighbors trying to salvage some of the

Shulers' belongings. The Schlueters put some items in their SUV, and Fred Jones stored some in his garage. Others had to be left to be stolen or thrown away.

50. The Schlueters let Roger and Baxter stay with them that night, hoping to hear about Carol in the morning. Don Schlueter awoke Roger to tell him that Fred Jones had called. Carol had called Fred to tell him that she was at Cox South Medical Center, had been diagnosed with a broken arm, and was being scheduled for trauma surgery.

51. Roger went to Cox South that morning and was reunited with his wife. Her left arm was in a temporary cast, and her right arm was purple, from shoulder to fingertips, because of bruising. Roger was told Carol's left arm was broken so severely that regular orthopedic surgery could not be used. Carol would need trauma surgery, and because of several scheduling conflicts it was put off for about a week. Carol said someone at the jail had finally noticed she was in excruciating pain and ordered her taken to Cox North for X-rays. That's where the broken bone, just above her elbow, was revealed. Carol said Harrison took several photographs of her injury and told her she was being released from custody. Harrison also said he had heard the 911 call, and it had been traced to the Shuler's phone and their residence. Carol said that wasn't possible. Don Schlueter admitted that he had told someone – apparently David Shuler – about an alleged threat from Roger Shuler (Roger made no improper or unlawful statement), which seemed to morph into a mythical 911 call.

52. Dr. Brian Buck, from the University of Missouri, performed surgery on Carol's arm – using about a dozen pieces of metal (plates and screws) to put it back together. Carol went through about four months of physical therapy, with her therapist saying the best-

case scenario was that she would regain 75-80 percent use of her left arm. The Shulers were left with a therapy bill for $7,500, which they have not been able to pay.

53. On 9/29/15, Paul Shuler filed a lawsuit, evidently at David Shuler's insistence, seeking to have Roger and Carol declared incapacitated and disabled (INP & DIS), with a guardian/conservator assigned for them. Roger and Carol challenged the case, with court-appointed attorney Dan Menzie on their behalf. On 3/28/16, Paul Shuler moved to have the case dismissed, via attorney Linda K. Thomas.

54. During the INP & DIS case, the Shulers learned that their medical records had been turned over to attorney Thomas. The Shulers did not give Burrell Health permission to release such records and can recall signing no release. Menzie viewed the records and reported to Roger Shuler that they included an entry that he suffered from "delusional disorder." Roger questioned Matt Charles, a psychiatric nurse in charge of his care, about that. Charles acknowledged making the notation, but Roger noted he had never been told of any such issue. Charles admitted he had no genuine grounds upon which to base the notation, and it remains unclear how it ever entered Roger's medical record. Roger demanded that it be removed, and Charles said he would do that. It's unclear if the notation ever was removed or not.

55. The Shulers wound up living at four different facilities that offered extended-stay services. At the Colonial Motor Lodge, on West Sunshine, their room was infested with bed bugs. Management blamed the infestation on the Shulers and forced them to leave.

56. In late January 2017, the Shulers were staying at Value Place, when they heard repeated knocks on their door. They weren't expecting anyone, so they didn't answer, but they did look outside to see several police cars and officers. The Shulers checked online to see that

Greene County Prosecuting Attorney Dan Patterson had filed charges against Carol (in Sept. 2016) for misdemeanor assault on a law enforcement officer and trespass. A court date had been set, but Carol never received notice, and a warrant was issued for failure to appear. Patterson had waited until 9/8/16, the last possible day to beat the one-year statute of limitations to file charges, and officers had waited more than four months to make an arrest.

57. On 1/31/17, the Shulers heard more knocking. They had been to the front desk that morning to pay, and no one had mentioned a problem to them. With no notice of a problem, the Shulers did not answer the door, but a Value Place employee broke the lock and knocked in the door. The employee said Value Place had the right to take such action any time a tenant was involved with a police matter. Roger Shuler received a copy of a contract the Shulers had signed, and it contained no such language. The Shulers were told they would have to leave, and the employee said, "We do this kind of thing all the time." The Shulers were putting items in their car when a Springfield Police officer appeared, apparently at the employee's behest. The officer arrested Carol on the outstanding warrant, and the Shulers never received a refund of the money they had paid Value Place that morning. A friend helped bail out Carol that night.

58. The Shulers learned the eviction was unlawful on at least four grounds, some of which the Shulers knew about before the event happened: (A) It was scheduled inside a 10-day window when execution cannot take place; (B) It happened, even though the Shulers' notice of appeal and payment of fees had put it under a stay; (C) Under Missouri law, a rent-and-possession claim cannot be filed until rent is at least one month late. The Shulers rent was barely five days late when eviction proceedings were started against them – and

it wouldn't have been late at all if Brittani, in Cowherd's office, had not told Roger that they were going to be evicted whether they paid rent or not; (D) Cowherd had breached the lease contract.

## CAUSES OF ACTION

### COUNT ONE

### VIOLATION OF FIRST AMENDMENT

### (ASSERTED VIA 42 U.S. CODE 1983)

### (ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, PATTERSON, D. SHULER, SCHLUETER, GREENE CO.)

59. Plaintiffs re-allege paragraphs 1-52 above, as if set out in full herein. The above-named defendants, acting under color of state law or in conjunction with state actors, knowingly and maliciously took steps to retaliate against the Shulers for Roger Shuler's reporting and to stop future reporting. Roger Shuler had been kidnapped by deputies inside his own home (with no sign of a warrant) and thrown in an Alabama jail for five months because of his reporting about legal and political corruption at the blog, *Legal Schnauzer*. The Shulers also endured a wrongful foreclosure on their home of 25 years in Birmingham, which is the reason they wound up in Springfield, MO. The same political forces that terrorized the Shulers in Alabama worked with Missouri connections named above to continue terrorism against the Shulers in the Show-Me State, all driven by a pathological drive to shut down Roger Shuler's reporting on his blog.

60. The steps in Missouri, designed to thwart the First Amendment right to a free press, included orchestrating an unlawful eviction, terrorizing the Shulers with assault rifles and handguns inside their home, brutalizing Carol Shuler and breaking her arm, twice falsely arresting and imprisoning her on bogus charges of "assault on a law enforcement officer, and prosecuting her without probable cause.

61. Defendant Schlueter repeatedly berated Roger Shuler over the latter's blog, admitted he reported a supposed threat that Roger Shuler had not made to someone in authority, leading cops to bring, in essence, a SWAT team to the Shulers' residence – and leading to false allegations that Roger Shuler had placed a threatening call to 911. Schlueter also admitted he knew the unlawful eviction was coming, suggesting he was involved in its planning. "I didn't think they were going to put your stuff out on the street," he said, while staring at all of the Shulers' belongings on the street. David Shuler also expressed concerns about Roger Shuler's blog, as did Gondy Shuler. "Oh, Roger, you shouldn't have named names," she told her son. This suggests she knew someone had been terrorizing Roger and Carol because of his blog – and via David Shuler – she likely knew who they were, and that they originated in Alabama, but she did nothing to stop it.

62. As a result of defendants' unlawful actions, the Shuler have suffered, and continue to suffer from, devastating financial, emotional, and physical damages.

**COUNT TWO**

**VIOLATION OF FOURTH AMENDMENT**

**(ASSERTED VIA 42 U.S. CODE 1983)**

**(ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER, SCHLUETER, CONRAD, HARRISON, WADE, LYNN, GREENE CO.)**

63. Plaintiffs re-allege paragraphs 1-52 above, as if set out in full herein. The above-named defendants caused the Shulers' persons and property to be unlawfully seized, in violation of the Fourth Amendment.

64. Deputies burst into the Shulers' residence with no lawful grounds for doing so. There was no final order of eviction. Both Shulers were placed in handcuffs for no lawful reason. Carol Shuler was beaten, slammed to the ground, had her left arm shattered, and was falsely arrested and imprisoned, twice. The Shulers' belongings unlawfully were placed on the curb, where much of it was stolen by Cowherd's eviction crew, and possibly neighbors.

65. Later, while the Shulers were staying at Value Place, they had their door broken down (apparently at the direction of deputies), and Carol Shuler unlawfully was arrested a second time.

66. As a result of these unlawful actions, the Shulers continue to suffer substantial financial and emotional damages. The Shulers lost much of their furniture, clothing, jewelry, and more. Much of what they still have was damaged.

67. Emails and verbal statements indicate both David Shuler and Don Schlueter knew the unlawful eviction was going to happen and likely helped plan it. Emails and verbal statements indicate both David and Gondy Shuler falsely communicated to Cowherd (the landlord) that Roger and Carol would not be able to pay their own rent once the lease went month to month.

## COUNT THREE

## VIOLATION OF FOURTEENTH AMENDMENT

## (ASSERTED VIA 42 U.S. CODE 1983)

## (ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER, SCHLUETER, GREENE CO.)

68. Plaintiffs re-allege paragraphs 1-52 above, as if set out in full herein. The above-named defendants repeatedly sought remedies that are not allowed by law, violating the Shulers rights to due process and equal protection.

69. The eviction on 9/9/15 was unlawful on at least four grounds, as set out in No. 51 above. The eviction simply could not take place, especially since the Shulers' had filed a notice of appeal the day before, and there was no final eviction order. But the above-named defendants circumvented the law – or helped plan circumvention of the law – to make it happen anyway.

70. David Shuler wrote an *ex parte* letter to the judge in the Shulers' eviction case, making false accusations against Roger Shuler, trashing Roger's reputation, and indicating that he and his client (Gondy Shuler) intended to assist Cowherd in returning possession of the apartment in question. The letter was outrageously prejudicial and improper under any notion of due process and played a major role in causing Roger and Carol's extensive physical, emotional, and financial injuries.

71. Communications with Don Schlueter indicated he had inside knowledge about what was going to happen, knew it was unlawful, and did nothing to stop it. In fact, he helped facilitate actions that trampled the Shulers' right to due process.

**COUNT FOUR**

**FALSE ARREST**

**(ASSERTED VIA 42 U.S. CODE 1983)**

**(ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER,**

**SCHLUETER, CONRAD, HARRISON, WADE, LYNN, GREENE CO.)**

72. Plaintiffs re-allege paragraphs 1-52 above, as if set out in full herein. The above-named defendants, either directly or indirectly, took actions that caused Carol Shuler to twice be falsely arrested. Arnott and deputies under his control knew, or should have known, they had no grounds to be on the premises at S. Fort, but they not only were there, they brutalized Carol Shuler and broke her arm, with Arnott falsely claiming Carol had "assaulted a police officer." Statements from Harrison at the Greene County Jail indicated Carol was looking at a felony charge and $100,000 bond. Carol was released once X-rays showed her arm had been shattered and she would need trauma surgery. Not content to cause one false arrest, Arnott & Co. caused false charges to be brought against Carol in fall 2016, leading to her second arrest, on 1/30/17.

73. Officer Wade produced a Probable Cause Statement that is filled with hearsay and false information. In short, it presents zero probable cause for Carol Shuler's arrest, but Greene County PA Dan Patterson approved the charges anyway.

74. The Shulers continue to suffer significant financial and emotional damages because of these unlawful actions.

**COUNT FIVE**

**FALSE IMPRISONMENT**

**(ASSERTED UNDER 42 U.S. CODE 1983)**

**(ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER, G. SHULER, SCHLUETER, CONRAD, HARRISON, WADE, LYNN, GREENE CO.)**

75. Plaintiffs re-allege paragraphs 1-52 above, as if set out in full herein. The above-named defendants, either directly or indirectly, took actions that caused Carol Shuler to twice be falsely imprisoned. Arnott and deputies under his control knew, or should have known, they had no grounds to be on the premises at S. Fort, but they not only were there, they brutalized Carol Shuler and broke her arm, with Arnott falsely claiming Carol had "assaulted a police officer." Statements from Harrison at the Greene County Jail indicated Carol was looking at a felony charge and $100,000 bond. Carol was released once X-rays showed her arm had been shattered and she would need trauma surgery. Not content to cause one false imprisonment, Arnott & Co. caused false charges to be brought against Carol in fall 2016, leading to her second imprisonment, on 1/30/17.

76. Officer Wade produced a Probable Cause Statement that is filled with hearsay and false information. In short, it presents zero probable cause for Carol Shuler's arrest and imprisonment, but Greene County PA Dan Patterson approved the charges anyway.

77. The Shulers continue to suffer significant financial and emotional damages because of these unlawful actions.

## COUNT SIX

## EXCESSIVE FORCE

## (ASSERTED VIA 42 U.S. CODE 1983)

## (ARNOTT, CONRAD, HARRISON, WADE, LYNN, HOUSLEY, GREENE COUNTY)

78. Plaintiffs re-allege paragraphs 1-52 above, as if fully set out herein. The above-named defendants used excessive force in making two unlawful arrests of Carol Shuler.

79. Any use of force in a wrongful arrest is excessive. The Shuler arrest was unlawful, but multiple officers slammed Carol Shuler's head against a wall, body slammed her to the ground, and yanked so viciously on her limbs that her left arm was severely broken, to the extent it required trauma surgery. It's highly likely that Carol Shuler suffered a concussion that never has been treated

80. Roger Shuler also was a victim of excessive force, handcuffed for no reason, having multiple weapons directed at him. (Note: The officer who actually broke Carol's arm is known as "Mr. Blue Shirt" to the Shulers because that's what he was wearing that day, and is the only way the Shulers have of identifying him. They never have been able to determine his name, and it's possible he is not part of the Greene County Sheriff's Office, perhaps coming from Alabama or some other state or federal agency.)

81. The Shulers have suffered significant mental, physical, and financial damages from this excessive use of force.

## COUNT SEVEN

## DEFAMATION

## (ASSERTED VIA MISSOURI STATE LAW)
## (ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER,, P. SHULER, SCHLUETER, THOMAS, BURRELL HEALTH, GREENE COUNTY)

82. Plaintiffs re-allege paragraphs 1-52 above, as if set out in full herein. The above-named defendants caused false statements to be published about Roger and Carol Shuler, causing damage to their reputations. Specifically, they caused Carol Shuler to have a criminal record, even though she committed no crime. Carol Shuler's photograph has been published at a mug-shots Web site, based on her false arrest and imprisonment. The Shulers have an eviction in court records and on their credit report that was unlawful. Paul Shuler (likely with help from David Shuler) and attorney Thomas caused a baseless INP & DIS lawsuit to be filed, claiming the Shulers could not manage their own affairs and essentially seeking to make them wards of the state. Someone caused a false notation about "delusional disorder" to be placed in Roger Shuler's medical records and then released those records to parties who had no right to see them.

83. Defendants maliciously and willfully caused defamatory statements to be published about Roger and Carol Shuler.

84. Defendants Burrell, Mays, Davis, and Davis (with assistance from D. and P. Shuler and Schlueter) maliciously and willfully caused defamatory statements to be published about Roger and Carol Shuler. – to the Greene County Sheriff's Office and Missouri Senior Services.

85. As a result of defendants' unlawful actions, the Shulers have suffered mental anguish and suffering, as well as impairment of reputation and standing in the community, and personal humiliation.

86. Defendants acted with malice, knowing the statements in question were false, and this entitles the Shulers to punitive damages for the pain and suffering they have experienced due to the publication of defamatory material about them.

## COUNT EIGHT

## ABUSE OF PROCESS

## (ASSERTED VIA MISSOURI STATE LAW)

## (ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER, P. SHULER, SCHLUETER, THOMAS, GREENE CO.)

87. Plaintiffs re-allege paragraphs 1-52, as if set out in full herein. The above-named defendants caused legal process to be issued against the Shulers that was improper in the regular conduct of the proceeding. The defendants caused legal process to be issued for an ulterior motive.

88. The ulterior motive was to retaliate against Roger Shuler for his accurate reporting about legal and political corruption in Alabama and Missouri.

89. Defendants acted with malice and without probable cause, and the Shulers are entitled to compensatory and punitive damages.

## COUNT NINE

## ASSAULT AND BATTERY

## (ASSERTED VIA MISSOURI STATE LAW)

## (ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER,

## SCHLUETER, CONRAD, HARRISON, WADE, LYNN, GREENE COUNTY)

90. Plaintiffs re-allege paragraphs 1-52, as if set out in full herein. The above-named defendants touched Roger and Carol Shuler in rudeness and anger as set out above (or caused them to be touched in such a manner), constituting assault and battery under Missouri law.

91. Carol Shuler suffered severe physical injuries, and both Shulers suffered mental anguish and are entitled to compensatory and punitive damages.

## COUNT TEN

## TRESPASSING

## (ASSERTED VIA MISSOURI STATE LAW)

## (ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER,

## SCHLUETER, CONRAD, HARRISON, WADE, LYNN, GREENE CO.)

92. Plaintiffs re-allege paragraphs 1-52, as if set out in full herein. The above-named defendants (plus other unknown deputies and Cowherd employees), under Arnott's direction, entered the Shulers' residence without being licensed, privileged or invited to be there (or they helped cause said intrusion).

93. The deputies presented no court order or any other document, signed by a judge, that showed they had lawful grounds to be on the premises.

94. The deputies' actions constitute trespassing under Missouri state law, and the Shulers have suffered financial, physical, and emotional damages, as a consequence.

## COUNT ELEVEN

## INVASION OF PRIVACY

## (ASSERTED VIA MISSOURI STATE LAW)

## (ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER,, P. SHULER, THOMAS, SCHLUETER, BURRELL HEALTH, CONRAD, HARRISON, WADE, LYNN, GREENE CO.)

95. Plaintiffs re-allege paragraphs 1-52, as if set out in full herein. The above-named defendants, and other unknown deputies and Cowherd employees, under Arnott's direction, intruded on the Shulers' physical solitude or seclusion.

96. Defendants also caused an unlawful intrusion into Roger Shuler's private health-care records, and the intrusion even included a false notation re: "delusional disorder" to be placed in the file.

97. These actions constitute invasion of privacy under Missouri state law and caused the Shulers to suffer physical, emotional, and financial damages.

## COUNT TWELVE

## PERSONAL INJURY/NEGLIGENCE

**(ASSERTED VIA MISSOURI STATE LAW)**

**(ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER,**

**SCHLUETER, CONRAD, HARRISON, WADE, LYNN, GREENE COUNTY)**

98. Plaintiffs re-allege paragraphs 1-52, as if fully set out herein. The above-named defendants, particularly Cowherd, had a duty to provide a reasonably safe living environment for the Shulers. By conducting an unlawful eviction, or helping set said eviction in motion, the defendants could reasonably foresee that the Shulers would be injured – and, in fact, the Shulers suffered significant physical and emotional injuries, with Carol Shuler winding up with a broken left arm, horribly bruised right arm, likely concussion and severe emotional trauma – on top of the PTSD with which she had already been diagnosed. Roger Shuler watched his wife be brutalized from about 15 feet away, suffering emotional trauma – on top of the PTSD with which she had already been diagnosed. In Sept. 2020, Roger Shuler was diagnosed with Type 2 diabetes, even though he had never previously had a high blood-sugar reading – not until after the events described in this lawsuit. Medical journal articles state that the onset of Type 2 diabetes can come following extremely stressful events, such as the ones described herein. Specifically, "fight or flight" stress, such as that experienced when an assault weapon is pointed at your head, can prompt the release of excess cortisol in the body, setting up conditions that lead to diabetes in someone who has shown no symptoms previously.

99. Defendants D. Shuler and Harrison, with assistance from Defendant Schlueter, helped concoct a bogus 911 call, prompting the Greene County Sheriff's Office to greatly

enhance the number of officers, and the weaponry, assigned to the eviction. This greatly increased the likelihood that the Shulers would be injured.

100.    The Shulers suffered substantial physical, emotional, and financial damages as a result of these unlawful and negligent actions.


## COUNT THIRTEEN

## INFLICTION OF EMOTIONAL DISTRESS

## (ASSERTED VIA MISSOURI STATE LAW)

## (ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER, SCHLUETER, CONRAD, HARRISON, WADE, LYNN, GREENE CO.)


101.    Plaintiffs re-allege paragraphs 1-52, as if set out fully herein. The above-named defendants knew, or should have known, they had no lawful grounds to enter the Shulers' residence – or to help set an unlawful eviction in motion. They entered the residence in a SWAT-team fashion, terrorizing the Shulers in their own home and eventually causing severe physical and emotional injuries.

102.    Defendants' actions were negligent, reckless, wanton, and likely intentional and caused both Roger and Carol Shuler extraordinary emotional distress, to the point that they no longer feel safe inside their own home or when they simply are running errands in their vehicle. The Shulers continue to experience physical, emotional, and financial damages.


## COUNT FOURTEEN

## PREMISES LIABILITY

## (ASSERTED VIA MISSOURI STATE LAW)

## (COWHERD, COWHERD CONSTRUCTION)

103.    Plaintiffs re-allege paragraphs 1-52, as if set out fully herein. The above-named

defendants owned the property upon which Carol and Roger Shuler were injured.

Defendants had a duty to maintain a safe living environment, free from reasonably

foreseeable hazards. Instead, Cowherd caused heavily armed deputies to swarm the

Shulers' property, bursting through the front door and ultimately causing severe injuries.

104.    The Shulers continue to experience physical, emotional, and financial damages

due to defendants' failure to maintain a safe environment.

## COUNT FIFTEEN

## FORCIBLE ENTRY AND DETAINER

## (ASSERTED VIA MISSOURI STATE LAW)

## (ARNOTT, COWHERD, LOWTHER, LULICH, HOUSLEY, D. SHULER, G.

## SHULER, SCHLUETER, CONRAD, HARRISON, WADE, LYNN)

100     . Plaintiffs re-allege paragraphs 1-52, as if set out fully herein. The above-named

defendants used "force, strong hand, and weapons" to "excite fear and apprehension

of danger," in the Shulers, "carrying away their goods" and creating "circumstances

of terror."

101     . Defendants either actively participated in such forcible entry or created circumstances that caused such entry to happen. The Shulers continue to experience physical, emotional, and financial damages due to defendants' forcible entry and abusive actions inside their home.

## COUNT SIXTEEN

## MALICIOUS PROSECUTION

## (ASSERTED VIA MISSOURI STATE LAW)

## (P. SHULER, D. SHULER, THOMAS)

102     . Plaintiffs re-allege paragraphs 1-52 as if set out fully herein. The above-named defendants, without probable cause, instituted an INP & DIS lawsuit, seeking to have Roger and Carol Shuler declared wards of the state.

103     . Said lawsuit was dismissed, with a finding in Roger and Carol's favor. The lawsuit was instituted without probable cause, with no basis in law or fact, and caused Roger and Carol emotional harm and damage to their reputations.

## COUNT SEVENTEEN

## CONVERSION

## (ASSERTED VIA MISSOURI STATE LAW)

## (ARNOTT, COWHERD, LOWTHER, LULICH, HOSLEY, D. SHULER, SCHLUETER, CONRAD, HARRISON, WADE, LYNN, GREENE CO.)

104     . Plaintiffs re-allege paragraphs 1-52 above, as if set out in full herein. The above-

named defendants participated in a scheme to take the Shulers' personal property and

convert it to their own use or purposes.

105     . These actions cost the Shulers' almost all of their home's contents, to the point

that   they have been forced to live in extended-stay hotels and struggle to survive

from week to week.

106     . These actions caused the Shulers to suffer ongoing financial, emotional, and

physical damages that could aptly be described as "catastrophic."


## COUNT EIGHTEEN

## CIVIL CONSPIRACY

## (ASSERTED VIA 42 U.S. CODE 1983)

## (ALL DEFENDANTS)


107. All defendants, possibly others, reached an agreement to accomplish an

unlawful purpose, to punish Roger Shuler for practicing journalism and Carol Shuler

for being married to a journalist. This conspiracy has heaped enormous financial,

physical, and emotional harm upon the Shulers.


## COUNT NINETEEN

## FAILURE TO ADEQUATELY HIRE, TRAIN, AND SUPERVISE

## EMPLOYEES

## (ASSERTED VIA SEC. 1983 AND MISSOURI STATE LAW)

## (ARNOTT, COWHERD, LOWTHER, HOUSLEY, GREENE CO.S)

100   . Plaintiffs re-allege paragraphs 1-52 above, as if set out in full herein. Defendant

Arnott allowed deputies under his supervision to pursue an eviction that was unlawful

on at least 10 grounds and was not even supported by a signed court order or a final

judgment in the rent-and-possession case. Defendant Cowherd allowed employees

under his supervision to violate terms of a lease and violate Missouri law regarding a

Notice to Vacate. Cowherd allowed members of his eviction crew to steal large

quantities of the Shulers' personal belongings. Defendant Lowther allowed an

attorney under his supervision to pursue an eviction without a final judgment, without

a signed court order – and even though execution had been stayed by timely filed

Notice of Appeal.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Roger and Carol Shuler request of this Court the following

monetary and equitable relief against defendants:

A. A declaratory judgment holding that actions of the Defendants described herein

violated the Plaintiffs' rights as secured by the First, Fourth, and Fourteenth

Amendments to the Constitution of the United States and by Missouri state law.

B. A permanent injunction enjoining the Defendants, their agents, successors,

employees, attorneys, and those acting in concert with the defendants at the

defendants' request from continuing to violate the Shulers' constitutional rights.

C. An order of compensatory and punitive damages.

D. An order to make the Shulers whole by removing Carol Shuler's unlawful arrest and incarceration from the record, along with photographs at any Web site that portray Carol Shuler in a false and criminal light – plus removal from any records and credit reports all indications that the Shulers were evicted.

E. Such other legal and equitable relief as this Court may deem necessary or proper.

Respectfully submitted, this _29th_ day of _Jan._ , 2020

*Carol Shuler*

Carol Shuler, Pro Se

*Roger Shuler*

Roger Shuler, Pro Se

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY UNDER FEDERAL LAW**

Roger and Carol Shuler
4319 S. National Ave.
No. 278
Springfield, MO 65810

**STATEMENT OF VERIFICATION**

I have read the above complaint and it is correct to the best of my knowledge.

Roger Shuler, Pro Se

Carol Shuler Pro Se

## CERTIFICATE OF SERVICE

We hereby certify that on ____Jan. 29____, 2020, we served this document on each

defendant in the above-styled case, by sending a copy via certified mail.

Roger Shuler, pro se

Carol Shuler, pro se