**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| CAROL SHULER AND ROGER SHULER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  6:20-cv-03281-MDH |
| JIM ARNOTT, et al., | ) ) | |
| Defendants. | ) ) | |

## ORDER

Before the Court is Defendants Jim Arnott's, Christian Conrad's, Scott Harrison's, Debi Wade's, and Jeremy Lynn's ("Moving Defendants'") 12(b)(6) Motion to Dismiss Federal Law Claims (Doc. 219) contained in Plaintiff's Third Amended Complaint (Doc. 212). Also before the Court is Moving Defendant's Motion to Dismiss Missouri State Law Claims (Doc. 221). Carol and Roger Shuler ("Plaintiffs") have responded (Doc. 226). Moving Defendants have responded in turn (Doc. 228). Plaintiffs remain pro se. The Court has reviewed Plaintiff's Third Amended Complaint, Defendants' Motion, and Plaintiffs' response. For reasons set forth herein, Moving Defendant's Motion to Dismiss Missouri State Law Claims is **MOOT**. Moving Defendants' Motion to Dismiss Federal Law Claims is **GRANTED**. This order also renders **MOOT** Moving Defendants' Motion to Compel (Doc. 231).

## FACTUAL BACKGROUND

Plaintiffs' allegations against Moving Defendants regard an incident on September 9, 2015. Plaintiffs' Third Amended Complaint consists of sixty-six pages and alleges thirty counts of various constitutional, federal, and state law violations against twenty-seven defendants. Moving

1

Defendants are implicated in some, but not all allegations. Plaintiffs' Third Amended Complaint realleges various claims featured in earlier versions of Plaintiffs' complaint, which this Court previously dismissed with prejudice.

Taking Plaintiffs' allegations as true, Plaintiffs lived in Alabama for twenty-seven years and were politically persecuted in that state by persons other than Moving Defendants in retaliation for Roger Shuler posting material on his blog, *Legal Schnauzer*. Doc. 212 ¶ 29. Plaintiffs moved to Springfield, Missouri to avoid political persecution and because their Alabama home was foreclosed. Doc. 212 at ¶ ¶ 29-30. In Springfield, Plaintiffs were treated at Burrell Health Services and diagnosed with post-traumatic stress disorder. Doc. 212 at ¶ 36. Roger Shuler's mother agreed to pay the rent for a duplex for Plaintiffs. Doc. 212 at ¶ 37. In June 2015, Roger's brother David Shuler told him that the landlord was willing to enter a new lease. Doc. 212 at ¶ 41. On July 2, 2015, a notice was taped to Plaintiffs' door telling them to vacate. Doc. 212 at ¶ 42. In August 2015, Plaintiffs received notice of a rent and possession lawsuit being filed against them Doc. 212 at ¶ 43. On August 12, 2015, two employees of Burrell called 911 and reported Roger Shuler threatened to shoot officers during any attempted eviction and Roger had a gun. Doc. 212 at ¶ 46. On August 31, 2015, the court in the rent and possession case ruled in favor of the landlord for both rent and possession. Doc. 212 at ¶ 44.

On September 2, 2015, David Shuler sent an email to Roger Shuler stating Defendant Harrison said a dispatcher had reported Roger Shuler called 911 and threatened to shoot anyone who attempted to evict the Plaintiffs. Doc. 212 at ¶ 45. This email was inaccurate, because it was two Burrell employees, not Roger Shuler, who called 911. Doc. 212 at ¶ 46. Plaintiffs received notice eviction was scheduled for September 9, 2015. Doc. 212 at ¶ ¶ 42-43. Defendant Housley, an attorney at the law firm of Lowther Johnson, acting in an advisory role to the Greene County

2

Sheriff's Office, gave the go-ahead to proceed with the eviction. Doc. 212 at ¶ 9, 50. On September 9, 2015, at approximately 2:00 PM, Defendant Arnott, along with Defendants Harrison, Lynn, plus other officers, burst into Plaintiffs' residence. Doc. 212 at ¶ 49. Defendant Harrison pointed a firearm at Roger Shuler. Doc. 212 at ¶ 49. Defendant Lynn handcuffed Carol Shuler and someone slammed Carol Shuler into the wall. Doc. 212 at ¶ 49. Defendant Arnott handcuffed Roger Shuler. Doc. 212 at ¶ 50. Carol Shuler then went in and out of the apartment to place personal items in the trunk of Plaintiffs' vehicle, but as she approached the apartment, Defendants Wade and Harrison blocked her path. Doc. 212 at ¶ 51. An unknown officer, who Plaintiffs label "Mr. Blue Shirt," approached Carol Shuler from behind and slammed her to the ground, then grabbed both of her arms and broke one of them. Doc. 212 at ¶ 51. Plaintiffs have never identified "Mr. Blue Shirt" and believe he may or may not be associated with one of a variety of law enforcement agencies. Doc. 212 at ¶ 97. Carol Shuler was arrested and taken away in a squad car, and Roger Shuler was released. Doc. 212 at ¶ ¶ 51, 54. By the next morning, September 10, 2015, Carol Shuler had been let go and reunited with Roger Shuler at a hospital. Doc. 212 at ¶ ¶ 56-57. After September 9, 2015, the Plaintiffs suffered from multiple acts of individuals other than the Moving Defendants. Doc. 212 at ¶¶ 55 *et seq*. Carol Shuler was later found guilty of a misdemeanor charge of assault against a law enforcement officer stemming from the incident wherein her arm was broken. Doc. 212 at ¶ 65.


## STANDARD

A complaint must contain factual allegations, when accepted as true, sufficient to state a claim of relief plausible on its face. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "must accept the allegations contained in

the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (internal citations omitted). The complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level," and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 545 (2007). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.  State Law Claims

Plaintiffs' Third Amended Complaint realleges various claims from earlier versions of Plaintiffs' complaint, which this Court previously dismissed with prejudice. Doc. 142. "Dismissal with prejudice has the effect of a final adjudication on the merits." *TCBY Sys., Inc. v. EGB Assocs., Inc.*, 2 F.3d 288, 290 (8th Cir. 1993) (citations omitted). The below counts against the following defendants in Plaintiffs' Third Amended Complaint are moot, as this Court previously dismissed these counts with prejudice.

    A.  Count Nine – Defamation against Defendant Arnott;

    B.  Count Ten (mistakenly labeled Count Nine in Third Amended Complaint) – Abuse of Process against Defendant Arnott;

C. Missouri law claims in Count Eleven (mistakenly labeled Count Ten in Third Amended Complaint) – Assault and Battery against Defendants Arnott, Conrad, Harrison, Wade, and Lynn (federal law claims alleged under this count were not previously dismissed and therefore remain active);

D. Count Twelve (mistakenly labeled Count Eleven in Third Amended Complaint) – Trespass against Defendants Arnott, Conrad, Harrison, Wade, and Lynn;

E. Count Thirteen (mistakenly labeled Count Twelve in Third Amended Complaint) – Invasion of Privacy and Identity Theft against Defendants Arnott, Conrad, Harrison, Wade, and Lynn;

F. Count Fourteen (mistakenly labeled Count Thirteen in Third Amended Complaint) – Personal Injury/Negligence against Defendants Arnott, Conrad, Harrison, Wade, and Lynn;

G. Count Fifteen (mistakenly labeled Count Fourteen in Third Amended Complaint) – Infliction of Emotional Distress against Defendants Arnott, Conrad, Harrison, Wade, and Lynn;

H. Count Seventeen (mistakenly labeled Count Sixteen in Third Amended Complaint) – Forcible Entry and Detainer against Defendants Arnott, Conrad, Harrison, Wade, and Lynn;

I. Count Nineteen (mistakenly labeled Count Eighteen in Third Amended Complaint) – Conversion against Defendants Arnott, Conrad, Harrison, Wade, and Lynn; and

J. Missouri law claims in Count Twenty-Three (mistakenly labeled Count Twenty-Two in Third Amended Complaint) – Failure to Adequately Hire, Train, and Supervise

5

Employees against Defendant Arnott (federal law claims alleged under this count were not previously dismissed and therefore remain active).

This finding renders **MOOT** Moving Defendant's Motion to Dismiss Based on the Applicable Statutes of Limitations all Missouri Law Claims (Doc. 221). Only Plaintiffs' federal law claims remain.

## II.     Federal Claims

Plaintiffs' federal law claims consist of various § 1983, § 1985, and § 1986 civil rights allegations. Plaintiffs raised the majority of these claims in their Second Amended Complaint. Unlike Plaintiff's state law claims, however, this Court did not previously dismiss Plaintiffs' federal law allegations. The Court will therefore consider the merits of each argument raised by Moving Defendants.

### A.     Official Capacity

Plaintiffs allege each of their claims against Moving Defendants in both individual and official capacity. Doc. 212 at ¶¶ 4-23. Though Moving Defendants contend Plaintiffs fail to allege any constitutional violations whatsoever, Moving Defendants also argue Plaintiffs allege insufficient facts to grant relief based on any official capacity claim. Doc. 220 at 16-17. Moving Defendants also argue all official capacity allegations are duplicative. Doc. 220 at 17. The Supreme Court held official capacity claims are in practice suits against the official's office. "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). *See also Banks v. Slay*, 875 F.3d 876, 878 (8th Cir. 2017) ("a core tenet of 42 U.S.C. § 1983

6

jurisprudence is that an official-capacity suit against an individual is really a suit against that official's government entity"). To successfully allege § 1983 violations against municipalities for constitutional violations, plaintiffs must allege violations resulted from either: 1) official municipal policy; 2) an unofficial custom; or 3) "deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted). A deliberately indifferent failure to train case requires plaintiffs show: 1) inadequate training practices; 2) deliberate indifference to others' rights in adopting training practices; and 3) causal link between training deficiencies and plaintiffs' injuries. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (citations omitted). Moreover, there must be a patently obvious need for training, or else local government cannot have been deliberately indifferent. *Parrish*, 594 F.3d at 997-998. When the alleged right violation is patently unlawful, even a complete lack of training, on its own, is insufficient to state a municipal liability claim. *Id*. ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [local government]") (*quoting City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989) (brackets by *Parrish*)).

To show deliberate indifference to a training need, Plaintiffs must be able to show, "…in light of the duties assigned to [the] specific officers…the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers…can reasonably be said to have been deliberately indifferent to the need." *Parrish*, 594 F.3d at 998 (*quoting City of Canton*, supra, 489 U.S. at 390). "In other words, [Plaintiffs] must demonstrate that [Moving Defendants] 'had notice … procedures were inadequate and likely to result in a violation of constitutional rights.'" *Parrish*, supra. (*quoting Andrews*, 98 F.3d at 1076) (citations omitted). Plaintiffs must also assert grounds to show Moving Defendants

exhibited "deliberate indifference to the risk that a violation of a *particular* constitutional or statutory right will follow the decision." *Id*.

Plaintiffs fail to allege any constitutional violations resulted from official municipal policy or unofficial custom. Plaintiffs do appear to make several allegations regarding Greene County's training of employees. Doc. 212 at ¶ 152. While these allegations fail to specifically implicate any Moving Defendant, this Court will nonetheless address these allegations, given Moving Defendants are Greene County Sheriff's Office employees. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office").

Allegations by Plaintiffs regarding a failure to train amount to only threadbare recitations of elements supported by conclusory statements. Plaintiffs merely conclude, "Greene County was deliberately indifferent about training and supervising sheriff's office employees on the proper procedures regarding a would-be eviction and about the use of force…" and that "[t]he county also failed to adequately train and supervise a circuit clerk employee who unlawfully issued a writ of execution…" Doc. 212 at ¶ 152. Plaintiffs failed to allege any facts to the effect that there has been a continuing, widespread, persistent pattern of similar right violations that could create a custom. Doc. 212. Nor do Plaintiffs allege facts to support a causal relationship between any policy or custom of Greene County and any constitutional right violation. Doc. 212. Plaintiffs also fail to allege any facts putting Greene County on notice of risk law enforcement, or anyone else, would injure Plaintiffs. Doc. 212. Accordingly, all official capacity claims against Moving Defendants are dismissed with prejudice.

8

## B. Qualified Immunity

Plaintiffs allege each of their claims against Moving Defendants in both individual and official capacity. Doc. 212 at ¶¶ 4-23. Though Moving Defendants contend Plaintiffs fail to allege any constitutional violations whatsoever, Moving Defendants also argue qualified immunity protects Moving Defendants from all individual capacity claims. Doc. 220 at 15-16. Discussing qualified immunity, the Supreme Court has held, "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013).

A right is clearly established when the "contours of the right [are] sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "in the light of pre-existing law the unlawfulness must be apparent." *Id*. (citations omitted). Dismissal of claims on a 12(b)(6) motion, requires Defendants "show they are entitled to qualified immunity on the face of the complaint." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017). Because Moving Defendants assert qualified immunity protects all Moving Defendants from personal liability on every alleged federal law count, this Court will first address Moving Defendants' arguments as to whether Plaintiffs have alleged a facially valid constitutional claim implicating one or more Moving Defendants. If so, then this Court will address qualified immunity.

## C. Count One (Defendant Arnott): First Amendment via 42 USC § 1983

"It is settled at a high level of generality that the First Amendment prohibits government officials from retaliating against a citizen for exercising his right of free speech." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). A First Amendment retaliation claim will fail unless a plaintiff demonstrates, "(1) that he engaged in a protected activity, (2) that the defendant's actions caused an injury to the plaintiffs that would chill a person of ordinary firmness from continuing to engage in the activity, and (3) that a causal connection exists between the retaliatory animus and the injury." *Scott v. Tempelmeyer*, 867 F.3d 1067, 1070 (8th Cir. 2017), citing *Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012). Eighth Circuit courts have recognized, "Two types of actual injury give rise to First Amendment standing. The first is the injury caused by the threat that the speaker will be prosecuted or otherwise punished for his or her speech.... A second injury-in-fact occurs when a plaintiff foregoes expression in order to avoid a sanction or penalty." *Stamm v. Cnty. of Cheyenne, Nebraska*, 326 F. Supp. 3d 832, 858–59 (D. Neb. 2018) (*quoting Parow v. Kinnon*, 300 F.Supp.2d 256, 261–62 (D. Mass. 2004)).

Plaintiffs allege "deputies under Defendant Arnott's command ensured that the Shulers' computer was confiscated, making it impossible to blog…The same political forces that terrorized the Shulers in Alabama worked with Missouri connections…to continue terrorism against the Shulers…all driven by a pathological drive to shut down Roger Shuler's reporting on his blog." Doc. 212 at ¶ 69. Defendants argue generally that Plaintiffs' pleadings fail to establish causality and injury. Doc. 220 at 7-8.

This Court agrees Plaintiffs' claims fail to clearly establish injury. Plaintiffs claim they were "terrorized" during the eviction process and their "computer was confiscated, making it impossible to blog." Doc. 212 at ¶ 69. However, Plaintiffs fail to allege any Moving Defendant

seized and took into custody Plaintiffs' computer. Plaintiffs also fail to allege any Moving Defendant prevented Roger Shuler from electronically publishing new content through some means apart from Plaintiffs' computer. Rather, Plaintiffs allege the Cowherd eviction team, not Moving Defendants, placed their belongings on the curb or stole them. Doc. 212 at ¶ 54-55. Plaintiffs either attempted to secure the property from the curb in their car or abandoned it on the curb. Doc. 212 at ¶ 54-55. Without more, Plaintiffs' claim the removal of physical property, including a computer, from Plaintiffs' residence somehow prevented Roger Shuler from publishing new content, amounts to only a conclusory statement.

Apart from the conclusory claim that Alabama and Missouri political forces were cooperating to effectuate a "pathological drive" to shut down Plaintiff's blogging, Plaintiffs fail to allege any causal connection between Defendant Arnott's actions during the eviction and any injury to Plaintiffs' First Amendment rights. Doc. 212 at ¶ 69. Plaintiffs fail to allege Defendant Arnott is among the "political forces" referenced. Taking Plaintiffs' pleadings as true, Plaintiffs have failed to assert a claim for which this Court may grant relief. Moving Defendants' Motion is granted as to Count One, which this Court dismisses with prejudice.

**D.      Count Two (Defendants Arnott, Conrad, Harrison, Wade, and Lynn): Fourth Amendment via 42 USC § 1983**

To establish a § 1983 unreasonable seizure Fourth Amendment claim, Plaintiffs must show a seizure occurred and the seizure was unreasonable. *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003). The Supreme Court has held unreasonable seizures occur when government agents evict plaintiffs two weeks before eviction trial, even when government agents seized no

physical property beyond the real property from which plaintiffs were evicted. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56 (1992).

Though unclear, Plaintiffs appear to allege three distinct theories of unreasonable seizure. First, Plaintiffs allege only an interlocutory rather than a final judgment existed at the time of the eviction. Specifically, Plaintiffs contend the following.

> In August 2015, the Shulers received notice that Cowherd had filed a rent and possession lawsuit against them…The Shulers filed a counterclaim for breach of contract, and the case went before Judge Kelley Rose Halford on 8/27/15. On 8/28/15, the Shulers received a Notice to Vacate/Landlord execution which was signed by Cowherd attorney Craig Lowther, but not by a judge. It said eviction was scheduled for 9/9/15. The notice to vacate was posted before any possession judgment was entered and before any final judgment in the underlying case was reached. In an order entered on 8/31/15 Halford found for Cowherd on rent and possession and scheduled the Shulers' counterclaim for hearing on 10/1/15. The Halford order was listed on the docket as "interlocutory," not final. It was not final, of course, because all issues in the case had not been decided – and a pending hearing was set to hear the Shulers' half of the case. Doc. 212 at ¶¶ 43, 44.

Lack of a final judgement prior to eviction, Plaintiffs seem to claim, violates the Fourth Amendment. Doc. 212 at ¶¶ 43, 44. Second, Plaintiffs allege an eviction order requires a signature from a judge, rather than a clerk. Doc. 212 at ¶¶ 77, 78. Third, Plaintiffs allege they "timely filed a notice of appeal, with payment of proper fees, on 9/8/15 and notified all attorneys in the case of the appeal and stay." Doc. 212 at ¶ 48. Each of these issues, Plaintiffs argue, give rise to Fourth Amendment violations alleged in Count Two as well as the Fourteenth Amendment violations alleged in Court Four. Doc. 212 at ¶¶ 76, 77, 78, 85. Moving Defendants argue notice of eviction was given and Plaintiffs failed to allege facts demonstrating Moving Defendants took any physical property. Doc. 220 at 9. This Court will separately address each of Plaintiffs theories.

Plaintiffs' own allegations contradict Plaintiffs' claim no final judgement existed at the time of the eviction. Doc. 212 at ¶¶ 43, 44. Plaintiffs claim the court reached no final eviction judgment, and simultaneously acknowledge Judge Halford held a proceeding to decide the

possession issue, on which Judge Halford ruled in favor of the landlord. Doc. 212 at ¶ ¶ 43, 44. Plaintiffs concede they received notice of eviction. Doc. 212 at ¶ ¶ 43, 44.

Though courts traditionally must rely on the pleadings alone for 12(b)(6) purposes, courts may under limited circumstances rely on external documents necessarily embraced by pleadings. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) ("documents necessarily embraced by the complaint are not matters outside the pleading") (citations omitted). Plaintiffs' complaint necessarily embraces the state court record for Plaintiffs' eviction case, as Plaintiffs based their allegations under Count Two in large part on the substance of that state court record.

The underlying state court record appears to show a final judgement on the issue of possession existed at time of eviction. J. at 1. The document granting possession of the property to the landlord is titled "Judgment," not "Interlocutory Judgment." J. at 1. A handwritten note on an uploaded docket sheet dated August 27, 2015, indicates the Court found in favor of the landlord on the possession issue following trial. Docket at 1. The same note indicates the Court intended to address during the October 1, 2015 hearing, only issues of damages on petition and counterpetition. Docket at 1. The terms "Interlocutory Judgment" or "Partial Judgment" appear only on the electronic line entry in the Missouri Case.net website. Courts have recognized Case.net electronic docket entries do not constitute official court records. *See, e.g.*, *McGuire v. Edwards*, No. 4:18-CV-71 CAS, 2018 WL 623590, at *1 (E.D. Mo. Jan. 30, 2018); *McGuire v. Edwards*, 571 S.W.3d 661, 670 (Mo. Ct. App. 2019); *Johnson v. McCullough*, 306 S.W.3d 551, n4 (Mo. 2010). Though plausible lack of a final judgement before eviction may under certain limited circumstances implicate the Fourth Amendment, Plaintiffs' allegations are insufficient for 12(b)(6) purposes to show no such judgment existed.

Plaintiffs also appear to assert their eviction violates the Fourth Amendment because the notice to vacate lacks a judge's signature. Doc. 212 at ¶ ¶ 77, 78. In support, Plaintiffs cite the text of RSMo 534.350.

> The judge rendering judgment in any such cause may issue execution at any time after judgment, but such execution shall not be levied until after the expiration of the time allowed for the taking of an appeal, except execution for the purpose of restoring possession shall be issued no sooner than ten days after the judgment.

Citing no additional supporting authority, Plaintiffs argue this text requires a judge rather than clerk sign a writ of execution. The plain language of the statute, however, is concerned with *when* execution may be issued, not *who* may sign a writ of execution. It remains common practice in Missouri and elsewhere for a court clerk to sign the writ of execution. *Coonts v. Potts*, 316 F.3d 745, n4 (8th Cir. 2003). Plaintiffs' allegations regarding a clerk's signature on a writ of execution are insufficient to give rise to any Fourth Amendment violation.

Plaintiffs also claim they "timely filed a notice of appeal, with payment of proper fees, on 9/8/15 and notified all attorneys in the case of the appeal and stay." Doc. 212 at ¶ 48. The state court record also appears to show Plaintiffs filed a notice of appeal September 8, 2015, one day before eviction. Notice of Appeal at 1. The Missouri Court of Appeals appears to have acknowledged receipt of the appellate filing the following day. Per statute, execution for restoring possession is stayed pending appeal, if appellants post a sufficient appeal bond. Mo. Ann. Stat. § 535.110. Plaintiffs, however, fail to allege how failure to stay eviction pending appeal implicates Fourth Amendment protections against unreasonable seizure where the court already held a trial on the merits of the possession issue and entered judgment in favor of the landlord.

Plaintiffs cite *Soldal* to support the claim failure to stay eviction pending appeal gives rise to a Fourth Amendment unreasonable seizure claim. Plaintiffs, however, overstate the probative value

of the Supreme Court's *Soldal* holding. In *Soldal*, defendants evicted plaintiffs from a mobile home lot two weeks before the scheduled trial to determine possession. In contrast, Plaintiffs have alleged insufficient facts to show no final judgement existed at the time of their eviction. Plaintiffs concede a trial was held on the possession issue, wherein Judge Halford decided in the landlord's favor. Doc. 212 at ¶ ¶ 43, 44. Implicating Fourth Amendment protections against unreasonable seizures where defendants failed to stay eviction pursuant to a valid judgement pending appeal would constitute a significant expansion of Fourth Amendment protections. This is especially true where the Supreme Court has repeatedly held Fourteenth Amendment due process protections do not require states provide appellate review. *Lindsey v. Normet*, 405 U.S. 56, 77 (1972) (citations omitted). Plaintiffs fail to sufficiently claim Moving Defendants' failure to stay eviction pending appeal implicates the Fourth Amendment's protection against unreasonable seizures, even if that alleged failure to stay violated Missouri statute.[1] Moving Defendants' Motion is granted as to Count Two, which this Court dismisses with prejudice.

### E.    Count Three (Sheriff Arnott): Sixth Amendment via 42 USC § 1983

Plaintiffs argue Defendant Arnott "caused deprivation of Carol Shuler's right to counsel in violation of the Sixth Amendment." Doc. 212 at ¶ 82. Though unclear, it appears Plaintiffs' allegation refers to representation during the misdemeanor criminal case against Carol Shuler. Doc 212 at ¶¶ 64-65. Plaintiff further argues Defendant Arnott violated Carol Shuler's Sixth Amendment confrontation clause rights when "no one claiming to have seen the alleged

---

[1] Though not explicitly argued by Moving Defendants, this Court remains skeptical of the properness of Plaintiffs' appeal. Per Missouri statute and case law, an aggrieved party may challenge a verdict from bench trials at the associate court level only via applications for trial de novo rather than an appeal. *See Needy v. Hammond*, 601 S.W.3d 312 (Mo. Ct. App. 2020); *Sansone Grp. DDR LLC v. Pennington-Thurman*, 613 S.W.3d 424, 425 (Mo. Ct. App. 2020).

touch/push [during the eviction] was mentioned in the probable cause statement." Doc 212 at ¶ 83. The probable cause statement Plaintiffs reference corresponds to a misdemeanor count of assault against a law enforcement officer, of which Carol Shuler claims to have been found guilty following bench trial. Doc. 212 at ¶¶ 64, 65. Plaintiffs argue "Officer Debi Wade [not a defendant listed in Count Two], who wrote the probable cause statement, admitted she did not see an assault, but an unidentified person 'advised' her of it." Doc. 212 at ¶ 64. Moving Defendants argue generally Plaintiffs' claims amount only to conclusory allegations failing to connect Defendant Arnott and Carol Shuler's right to counsel. Moving Defendants persuade.

Defendant is correct that Plaintiffs' allegations lack any alleged facts connecting Defendant Arnott to any perceived Sixth Amendment violation. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (justiciability requires injury be "fairly traceable" to challenged action). It remains unclear how Plaintiffs believe Defendant Arnott relates to any of these allegations. Further, Plaintiffs concede a public defender represented Carol during part of the criminal case. Doc 212 at ¶ 64.

Insofar as Plaintiffs attempt to implicate Defendant Wade in any alleged Sixth Amendment violation, Plaintiff's argument fails in this regard as well. Plaintiffs' description of Defendant Wade's probable cause statement appears consistent with Missouri Supreme Court Rule 21.04, outlining requirements for misdemeanor probable cause statements. Plaintiffs' argument cites no support for the proposition that Defendant Wade's probable cause statement somehow violated or even implicated Plaintiffs' Sixth Amendment protections. Moving Defendants' Motion is granted as to Count Three, which this Court dismisses with prejudice.

## F.     Count Four (Defendant Arnott): Fourteenth Amendment via 42 USC § 1983

Plaintiffs allege Fourteenth Amendment violations in Count Four against Defendant Arnott. Doc. 212 at ¶ ¶ 84-87. The Fourteenth Amendment provides no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Supreme Court held "if a full and fair trial on the merits is provided, the Due Process Clause of the Fourteenth Amendment does not require a State to provide appellate review." *Lindsey v. Normet*, 405 U.S. 56, 77 (1972) (citations omitted). The Court also held, however, when states allow appeal, "it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause." *Id* (citations omitted).

Plaintiffs incorporate into Count Four substantially the same alleged facts contained in Count Two.  Doc. 212 at ¶ ¶ 43, 44, 77, 78, 79, 85. Plaintiffs contend, "The eviction simply could not take place, especially since the Shulers had filed a notice of appeal the day before, and there was no final judgment and no-court authorized eviction order." Doc. 212 at ¶ 85. In other words, Plaintiffs appear to allege under Count Four, Fourteenth Amendment due process and equal protection violations when: 1) no final judgment existed at time of eviction; 2) the writ of execution lacks a judge's signature; and 3) appeal remains pending after payment of an appropriate bond. Defendant Arnott argues generally Plaintiffs alleged insufficient facts to give rise to any due process or equal protection claims. Doc. 220 at 9. Defendant Arnott persuades.

For reasons discussed fully under Count Two, Plaintiffs failed to sufficiently allege no final judgment as to possession existed at time of eviction. Similarly, for the same reasons discussed under Count Two, Plaintiffs' allegations as to the signature on the writ of execution fail to implicate any Fourteenth Amendment protections. Finally, Plaintiffs contend insufficient facts to

show how any alleged failure to stay eviction pending appeal violates the Fourteenth Amendment. Though equal protection prevents states from arbitrarily or capriciously denying appellate review when states provide appellate rights, Plaintiffs fail to allege any arbitrary or capricious denial of their statutory right to appeal. In fact, Plaintiffs concede they filed a notice of appeal and paid associated fees. Doc. 212 at ¶ 48. Denial of appellate review is separate from failure to stay eviction pending appeal.[2] Plaintiffs have alleged insufficient facts to show beyond a speculative level Defendant Arnott violated any due process or equal protection Fourteenth Amendment rights. Moving Defendants' Motion is granted as to Count Four, which this Court dismisses with prejudice.

### G. Count Five (Defendants Arnott, Conrad, Harrison, Wade, and Lynn): False Arrest via 42 USC § 1983

Plaintiffs allege false arrest against all Moving Defendants. Doc. 212 at ¶¶ 88-90. Courts have recognized some allegations of false arrest may implicate constitutional rights, so to give rise to § 1983 claims. *See, e.g., Parsons v. McCann*, 138 F. Supp. 3d 1086, 1106 (D. Neb. 2015); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001); *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013). A § 1983 false arrest claim requires, "'(1) detention or restraint of the plaintiff against his [or her] will, and (2) the unlawfulness of the detention or restraint, i.e., that the plaintiff was detained or restrained without probable cause.'" *Collier v. Nogelmeier*, No. 09-CV-16-LRR, 2010 WL 11692101, at *5 (N.D. Iowa Aug. 3, 2010) (citing *C.L.D. ex rel. Dixon v. Boyd*, No. 4:08-CV-788 CAS, 2010 WL 1838408, at *4 (E.D. Mo. May 6, 2010)). This mirrors elements of

---

[2] This Court reasserts skepticism discussed in prior footnote about whether Plaintiffs' attempt to appeal is proper, given Missouri statute and case law. *See Needy v. Hammond*, 601 S.W.3d 312 (Mo. Ct. App. 2020); *Sansone Grp. DDR LLC v. Pennington-Thurman*, 613 S.W.3d 424, 425 (Mo. Ct. App. 2020).

a Missouri state law false arrest claim. *See Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 472 (Mo. Ct. App. 2005). Courts agree, "a false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest. *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001) (citing *Anderson v. Franklin County,* 192 F.3d 1125, 1131 (8th Cir. 1999)). "Accordingly, a false arrest claim begins with a probable cause analysis." *Moore v. City of Desloge*, 692 F. Supp. 2d 1122, 1132 (E.D. Mo. 2010).

Plaintiffs' precise allegations regarding when and how false arrest occurred remain convoluted. Throughout the Third Amended Complaint, Plaintiffs allege various instances of restraint. Doc. 212 at ¶ ¶ 49, 51, 63. These include Defendant Lynn handcuffing Carol Shuler at the beginning of the eviction; an unknown officer, "Mr. Blue Shirt," handcuffing (and perhaps arresting) Carol following eviction; Defendant Harrison transporting Carol Shuler to jail following eviction; and an unknown Springfield Police Officer handcuffing and arresting Carol in 2017. Doc. 212 at ¶ ¶ 49, 51, 63. Moving Defendants argue: 1) Plaintiffs fail to assert any Moving Defendant arrested Roger; 2) Plaintiffs fail to implicate any Moving Defendant in Carol's arrest during the eviction; and 3) Plaintiffs concede Carol was found guilty of the offense she argues lacked probable cause. Doc. 220 at 9-10.

Plaintiffs' allegations surrounding Carol Shuler's 2017 arrest appear to implicate only an unnamed Springfield Police Department officer, not listed as a defendant in this action. Doc. 212 at ¶ 63. Plaintiffs' allegations about the 2017 arrest implicate no Moving Defendants. Doc. 212 at ¶ 63. While Plaintiffs fail to assert anyone arrested Roger Shuler, Plaintiffs do allege Defendant Arnott handcuffed Roger Shuler during eviction. Doc. 212 at ¶ 50. Given false arrest contemplates detention generally rather than only arrest, Plaintiffs' allegations regarding Roger Shuler's handcuffed detention plausibly implicates Fourth Amendment protection. Plaintiffs also fail to

specifically implicate Moving Defendants in Carol Shuler's arrest following eviction. Doc. 212 at ¶ 51. In terms of post-eviction events, Plaintiffs allege only "Mr. Blue Shirt" handcuffed Carol Shuler and Defendant Harrison transported her to the Greene County jail. Doc. 212 at ¶ 51. While unclear who Plaintiffs believe responsible for Carol Shuler's post-eviction arrest, "Mr. Blue Shirt" handcuffing and Defendant Harrison transporting Carol Shuler plausibly implicate Fourth Amendment protection. Contrary to Moving Defendants' argument, however, Plaintiffs in fact allege Defendant Lynn handcuffed Carol at the beginning of the eviction, also plausibly triggering Fourth Amendment protection. Doc. 212 at ¶ 49. Taken together, Plaintiffs' only false arrest allegations that conceivably implicate the Fourth Amendment consist of: 1) Defendant Arnott's handcuffing Roger Shuler at the beginning of the eviction; 2) Defendant Lynn's handcuffing Carol Shuler at the beginning of the eviction; and 3) Defendant Harrison's transportation of Carol Shuler to the Greene County jail.

Plaintiffs' false arrest claims regarding handcuffing, however, fail as a matter of law because allegations in Plaintiffs' complaint show probable cause supported Moving Defendants' handcuffing of Plaintiffs. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman v. Kedley,* 646 F.3d 518, 522–23 (8th Cir.2011) (citations omitted). Probable cause exists, "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id.* (citation omitted). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Id.* at 523. (citation omitted). Arguable probable cause speaks to a statutory right not clearly established at the time of the alleged violation. *Mitchell v. Shearrer*, 729

F.3d 1070, 1074 (8th Cir. 2013) (qualified immunity requires rights not be clearly established at time of alleged violation).

Taking as true all factual allegations in Plaintiffs' complaint, Moving Defendants believed Roger Shuler "threatened to shoot officers in any attempted eviction and that he had a gun." Doc. 212 at ¶ 46. Though Plaintiffs deny Roger Shuler threatened harm, Plaintiffs allege Burrell Behavioral Health employees informed authorities Roger in fact made such allegations, pursuant to a duty to warn. Doc. 212 at ¶ 46. Plaintiffs contend they received and reviewed a copy of the 911 call wherein Burrell employees informed authorities of Roger Shuler's threats. Doc. 212 at ¶ 46. Plaintiffs further allege officers specifically acknowledged Roger Shuler's threats caused the large number of officers present during the eviction and any display of firearms. Doc. 212 at ¶ 50. "When Roger asked about all the officers and weaponry, several officers said it was because of the threatening 911 call, which Roger never made." Doc. 212 at ¶ 50.

Plaintiffs' allegations leave little doubt Defendants Arnott and Lynn had probable cause to enter Plaintiffs' residence and handcuff Plaintiffs at the beginning of the eviction. Plaintiffs' own allegations indicate the state court reached a final judgment on the issue of possession. Doc. 212 at ¶ ¶ 43, 44. The state court record also indicates a final judgement as to possession. J. at 1. Plaintiffs concede they received notice of eviction. Doc. 212 at ¶ ¶ 43, 44. Plaintiffs allege Defendant Wade indicated counsel for Greene County gave "the go-ahead to proceed" with eviction. Doc. 212 at ¶ 50. Based on allegations from Plaintiffs' Third Amended Complaint alone, Moving Defendants had probable cause to enter Plaintiffs' residence to effect eviction.

As Plaintiffs fail to allege any arrest until after eviction, Plaintiffs' initial handcuffing remains akin to a *Terry* investigative stop. Use of handcuffs during a *Terry* stop is permissible as a reasonable precaution for officer safety. *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 457 (8th Cir.

2011). "'For the use of handcuffs during a *Terry* stop, the Fourth Amendment requires some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose.'" *El-Ghazzawy* at 457 (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 836 (6th Cir.2005)). Taking as true Plaintiffs' allegations, a 911 call from Burrrell employees acting on a duty to warn, formed the basis of Moving Defendants' belief Roger Shuler possessed a firearm and threatened harm to any officer attempting eviction. Doc. 212 at ¶ 50. Even if Roger Shuler did not threaten violence, Plaintiffs' allegations leave no doubt Moving Defendants understood those threats to have been made. It is well settled, "arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Branch v. Gorman*, 742 F.3d 1069, 1072 (8th Cir. 2014) (citations omitted). Given the nature and source of Moving Defendants' belief Plaintiffs posed a safety risk, Defendants Arnott and Lynn had probable cause to handcuff Plaintiffs at the beginning of the eviction. Probable cause in turn shows Plaintiffs alleged insufficient facts to show *unlawful* detention, rendering Plaintiffs false arrest claim facially invalid. Probable cause also shows Plaintiffs have qualified immunity from a § 1983 false arrest suit stemming from handcuffing at the beginning of the eviction. Plaintiffs' Third Amended Compliant fails to allege facts adequate to state a plausible false arrest claim, insofar as that claim contemplates alleged handcuffing at the beginning of the eviction.

Defendant Harrison's transport of Carol Shuler to the Greene County jail constitutes the other plausible implication of Fourth Amendment false arrest protections alleged against Moving Defendants. Citing *Heck* and *Grant*, Moving Defendants argue Plaintiffs may not now argue lack of probable cause where a court already found Carol Shuler guilty of the offense for which she was arrested. Doc. 220 at 9-10 (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Grant v.*

*Farnsworth*, 869 F.2d 1149, 1151 (8th Cir. 1989)). In response, Plaintiffs argue excessive force claims against arresting officers may nonetheless succeed even where the excessive force plaintiff was found guilty in the underlying criminal matter.[3] Doc. 226 at ¶¶ 12-13. Plaintiffs further argue Carol Shuler's suspended imposition of sentence does not constitute a conviction, stripping *Heck* and *Grant* of precedential value. Doc. 226 at ¶¶ 12-13. *See Yale v. City of Indep.*, 846 S.W.2d 193, 195 (Mo. 1993)) (suspended imposition of sentence not a conviction for purposes of Missouri law).

This Court agrees Carol Shuler's finding of guilt on the misdemeanor offense for which Defendant Harrison transported her to jail estops Plaintiffs from challenging via § 1983 probable cause underlying Carol Shuler's arrest for that offense. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Grant v. Farnsworth*, 869 F.2d 1149, 1151 (8th Cir. 1989). The Eighth Circuit held whether a state-level finding of guilt constitutes conviction for purposes of *Heck*, is a question of federal rather than state law. *Wilson v. Lawrence Cnty., Mo.*, 154 F.3d 757, 760 (8th Cir. 1998). At least one court has found a Missouri suspended imposition of sentence to constitute conviction for purposes of *Heck*, estopping plaintiffs from collaterally challenging validity of the underlying guilt finding. *Jackson Cnty. Pub. Water Supply Dist. No. 12 v. City of Greenwood, Missouri*, No. 07-251-CV-W-DW, 2008 WL 11429521, at *3 (W.D. Mo. Oct. 2, 2008). This Court therefore finds *Heck* estops Plaintiffs from challenging via § 1983 probable cause underlying Carol Shuler's arrest for the misdemeanor of which the court later found her guilty. This finding does not bear on whether Plaintiffs may challenge via § 1983 Carol Shuler's arrest on excessive force grounds. *Colbert v. City of Monticello, Ark.*, 775 F.3d 1006 (8th Cir. 2014). Moving Defendants' Motion is granted as to Count Five, which this Court dismisses with prejudice.

---

[3] Though Plaintiffs' response focuses on excessive force, allegations in Count Five regard false arrest.

**H.     Count Six (Defendants Arnott, Conrad, Harrison, Wade, and Lynn): False Imprisonment via 42 USC § 1983**

Moving Defendants argue Plaintiffs' false imprisonment allegations in Count Six duplicate Plaintiffs' false arrest claims in Count Five. Plaintiffs appear to allege no new facts in Count Six, asserting only previous allegations also constitute false imprisonment.  Doc. 212 at ¶¶ 91-94. False arrest is simply another name for false imprisonment *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007); *Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo. 2006). Therefore, Moving Defendants' Motion is granted as to Count Six, which is dismissed with prejudice based on redundance with Count Five.

**I.     Count Seven (Defendants Arnott, Conrad, Harrison, Wade, and Lynn): Excessive Force via 42 USC § 1983**

Plaintiffs allege they both suffered excessive force. Carol Shuler appears to allege excessive force in two separate incidents, both during eviction. First, Carol was "slammed against the wall when the door was thrown open." Plaintiffs also allege "someone slammed [Carol Shuler's] head into the wall 3-4 times as cuffs were being placed on her." Doc. 212 at ¶ 49. Carol Shuler's second excessive force allegation appears to occur when "an unknown officer ('Mr. Blue Shirt') approached her from behind…grabbed Carol and slammed her butt-first into the ground…the officer then grabbed both her arms and violently yanked them in an upward and backward position, breaking her arm and (perhaps with assistance from two other deputies) put her in handcuffs." Doc. 212 at ¶ 51. Plaintiffs claim they have never been able to identify the officer responsible for breaking Carol Shuler's arm, "it's possible he is not part of the Greene County Sheriff's Office, perhaps coming from Alabama or some other federal agency." Doc. 212

at ¶ 97. Plaintiffs claim, "a Probable Cause statement seems to identify [the officer responsible for breaking Carol's arm] as Lt. Christian Conrad, but [Plaintiffs] know that is not true." Doc. 212 at ¶ 51. Plaintiffs' complaint acknowledges, "when Roger asked about all the officers and weaponry, several officers said it was because of the threatening 911 call, which Roger never made." Doc. 212 at ¶ 50. Plaintiffs further allege Moving Defendants believed Roger Shuler to have threatened violence against anyone involved in eviction. Doc. 212 at ¶¶ 45, 46.

Plaintiffs contend Roger Shuler too "was a victim of excessive force, handcuffed for no reason, having multiple weapons directed toward him." Doc. 212 at ¶ 97. Plaintiffs specify Defendant Harrison pointed a firearm at Roger Shuler's head. Doc. 212 at ¶ 49. Moving Defendants argue Plaintiffs' excessive force claims involving Carol Shuler fail to implicate any Moving Defendant and any force used against Roger Shuler was reasonable, not excessive. Doc. 220 at 10-12. Moving Defendants persuade.

Plaintiffs' excessive force allegations pertaining to Carol Shuler fail to implicate any Moving Defendant. Plaintiffs allege, while Defendant Lynn handcuffed Carol Shuler, an unidentified person pushed Carol Shuler into the wall. Doc. 212 at ¶ 49. Plaintiffs' allegations of pushing Carol Shuler into the wall do not implicate any Moving Defendant. Plaintiffs contend the officer responsible for breaking Carol Shuler's arm, "Mr. Blue Shirt," may or may not have been an officer from Greene County, an unidentified federal agency, or Alabama. Doc. 212 at ¶ 97. Plaintiffs' complaint lists "Mr. Blue Shirt" as another defendant in this action, separate from any Moving Defendant (though oddly Plaintiffs' complaint does not list "Mr. Blue Shirt" as a defendant against Count Seven's excessive force claims). Doc. 212 at ¶ 26. Plaintiffs acknowledge a probable cause statement from Carol Shuler's misdemeanor case identifies "Mr. Blue Shirt" as Defendant Conrad. Doc. 212 at ¶ 51. Plaintiffs maintain this is untrue, insisting the person

25

responsible for breaking Carol Shuler's arm remains unidentified and may or may not be associated with any law enforcement agency. Doc. 212 at ¶¶ 51, 97. While Plaintiffs may have a facially valid excessive force claim regarding Carol Shuler's broken arm, Plaintiffs' own allegations make it clear Moving Defendants are not responsible. For a claim to be facially valid against Moving Defendants, however, it must of course implicate Moving Defendants.

Plaintiffs also fail to allege sufficient facts showing handcuffing Roger Shuler constituted excessive force. *See Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1008 (8th Cir. 2003) (painful handcuffing without more than mild injury does not constitute excessive force) (citations omitted). Given Plaintiffs' contention Moving Defendants believed Roger Shuler threatened violence against anyone attempting eviction, Defendant Harrison pointing a gun at Roger Shuler during the eviction was reasonable, not excessive. *See Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (force is excessive when it is unreasonable under particular circumstances); *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 989 (8th Cir. 2009) (officers justified in pulling weapons and forcing plaintiff to ground following shooting and high-speed car chase). Insofar as Plaintiffs intend to allege excessive force against Defendant Lynn for handcuffing Carol Shuler at the beginning of the eviction, this claim fails for the same reasons excessive force claims regarding Roger Shuler fail. Doc. 212 at ¶ 49. Moving Defendants' Motion is granted as to Count Seven, which this Court dismisses with prejudice[4].

## J.      Count Eight (Defendant Arnott): Malicious Prosecution via 42 USC § 1983

Plaintiffs incorporate prior allegations into Count Eight's malicious prosecution claim. Doc. 212 at ¶ 99. Plaintiffs allege no additional facts, merely asserting prosecution of the misdemeanor

---

[4] This holding does not prevent Plaintiffs from continuing to pursue this action against the presently unidentified officer "Mr. Blue Shirt."

charge of which a court found Carol Shuler guilty, constitutes malicious prosecution. Doc. 212 at ¶ 99. Moving Defendants argue Plaintiffs cannot claim malicious prosecution when the underlying criminal case resulted in a conviction. Doc. 220 at 12-13. Moving Defendants further argue, though Carol Shuler's criminal case resulted in a suspended imposition of sentence, this does not indicate lack of conviction for federal statute purposes. Doc. 220 at 12-13. Moving Defendants persuade.

"A Fourth Amendment claim under § 1983 for malicious prosecution requires the plaintiff to show a favorable termination of the underlying criminal case against him." *Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022). In context of § 1983 malicious prosecution claims, this means plaintiffs must show only no criminal conviction resulted. *Thompson* at 1341. Plaintiffs claim a suspended imposition of sentence fails to count as a conviction. Doc. 226 at ¶ 13. *See also Yale v. City of Indep.*, 846 S.W.2d 193, 195 (Mo. 1993)) (suspended imposition of sentence not a conviction for purposes of Missouri law). Though this may be correct under Missouri law, the question of whether a prior state-level finding of guilt constitutes a conviction for federal statute purposes, remains a question of federal law. *United States v. Ortega*, 150 F.3d 937, 948 (8th Cir. 1998). It is well settled a Missouri suspended imposition of sentence constitutes prior conviction for 21 U.S.C. § 841 purposes. *Id.* Whether a Missouri suspended imposition of sentence constitutes prior conviction for § 1983 purposes remains less settled, however, at least one court in this jurisdiction has ruled in the affirmative. *Jackson Cnty. Pub. Water Supply Dist. No. 12 v. City of Greenwood, Missouri*, No. 07-251-CV-W-DW, 2008 WL 11429521, at *3 (W.D. Mo. Oct. 2, 2008) (Missouri suspended imposition of sentence constitutes prior conviction for purposes of *Heck* and § 1983). Accordingly, Carol Shuler's misdemeanor suspended imposition of sentence constitutes a conviction for purposes of § 1983 malicious prosecution claims, precluding any §

1983 malicious prosecution allegation. Moving Defendants' Motion is granted as to Count Eight, which this Court dismisses with prejudice.

**K.     Count Eleven (labeled Count Ten in Third Amended Complaint) (Defendants Arnott, Conrad, Harrison, Wade, and Lynn): Assault and Battery via 42 USC § 1983**

Under Count Eleven, Plaintiffs largely incorporate allegations from prior counts, arguing Moving Defendants' conduct during the eviction amounts to assault and battery. Plaintiffs assert these claims through Missouri state law and § 1983. This Court already addressed the Missouri state law claims above. Only the § 1983 allegations of assault and battery remain. In addition to incorporating previously alleged facts, Plaintiffs further allege Moving Defendants "touched [Plaintiffs] in rudeness and anger (or caused them to be touched in such a manner), constituting assault and battery under Missouri law." Plaintiffs also claim "Roger Shuler's mental anguish likely led to a diagnosis of Type 2 diabetes, and Carol's likely contributed to kidney and blood pressure issues." Doc. 212 at ¶ ¶ 110, 111. Moving Defendants argue no relief may be granted because Plaintiffs alleged state, rather than federal constitutional or statutory rights violations. Moving Defendants also argue, "if 'assault and battery' under Missouri law is interpreted to actually mean excessive force via § 1983, then dismissal of Count 11 is appropriate because it is redundant to Count 7, which already expressly asserts excessive force via § 1983." Doc. 220 at 13. Moving Defendants persuade.

Plain language limits the scope of the statute to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983. The Supreme Court has

held the statutory language "broadly encompasses violations of federal statutory as well as constitutional law." *Maine v. Thiboutot*, 448 U.S. 1 (1980). The statute does not contemplate violations of state law alone. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). While not uncommon to allege § 1983 and state law assault and battery violations within a single complaint, plaintiffs customarily allege state law violations separate from § 1983 violations. *See, e.g., Wertish v. Krueger*, 433 F.3d 1062, 1064 (8th Cir. 2006); *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015).

Violation of state law occasionally also gives rise to violation of constitutional rights. *Buckley* at 495. Because Plaintiffs' § 1983 assault and battery allegations involve state actors causing actual physical injury to Carol Shuler, Plaintiffs' claims conceivably implicate Fourth Amendment protections against unreasonable seizures. *Burton v. Livingston*, 791 F.2d 97, 99 (8th Cir. 1986) ("In most instances of "simple assault"…there is no federal action under § 1983…unless actual physical injury results from the assault and the defendant's conduct is especially blameworthy."). This Court will therefore treat Plaintiffs' Count Eleven § 1983 assault and battery allegations as additional excessive force claims against Moving Defendants.

Given Plaintiffs simply incorporate previous allegations into Count Eleven, Plaintiffs Count Eleven allegations fail for the same reasons they failed under Count Seven. The minimal new allegations under Count Eleven—that Moving Defendants "touched [Plaintiffs] in rudeness and anger (or caused them to be touched in such a manner), constituting assault and battery under Missouri law" —amount to a threadbare recital of elements and conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts not required to accept as fact complaint's conclusory

statements and threadbare recitals of elements). Moving Defendants' Motion is granted as to Count Eleven, which is dismissed with prejudice.[5]

### L. Count Twenty (labeled Count 19 in Third Amended Complaint) (Defendants Arnott, Conrad, Harrison, Wade, and Lynn): Civil Conspiracy via 42 USC § 1983

Plaintiffs allege civil conspiracy against all Moving Defendants. Though unclear, Plaintiffs' specific allegations appear to implicate only Defendants Arnott and Harrison. Plaintiffs allege, "David Shuler communicated with [Greene County Sheriff's Office Deputy] Scott Harrison, who filed paperwork regarding Roger and Carol Shuler's eviction (per email dated 9/2/15)". Doc. 212 at ¶ 137. Plaintiffs also contend, "David Shuler, Paul Shuler, Schlueter, Cowherd, Lowther Johnson, and Scott Harrison (and likely others) – reached a meeting of the minds to punish and retaliate against the Shulers for Roger's constitutionally protected acts of journalism." Doc. 212 at ¶ 137. Elsewhere Plaintiffs allege, "deputies under Defendant Arnott's command ensured that the Shulers' computer was confiscated, making it impossible to blog...The same political forces that terrorized the Shulers in Alabama worked with Missouri connections...to continue terrorism against the Shulers...all driven by a pathological drive to shut down Roger

---

[5] Asking this Court to revisit its prior dismissal of certain counts within Plaintiffs' Second Amended Complaint, Plaintiffs argue, "As in *Sulik*, the Shulers filed their assault and battery claims under 1983, meaning it has a five-year SOL." (Doc. 212 at para 112) (citing *Sulik v. Taney Cnty., Mo.*, 393 F.3d 765, 766 (8th Cir. 2005)). This is incorrect. The *Sulik* Plaintiff did not allege assault and battery via § 1983. Rather, Count One of Sulik's pro se amended complaint alleged general, unspecified federal and constitutional rights violations under § 1983, while Count Two alleged assault and battery state law claims. Pls. Am. Compl. at ¶¶ 26-29. Contrary to Plaintiffs' claims, this Court dismissed only the state law allegations of Plaintiffs' Second Amended Complaint pursuant to the relevant statute of limitation. Doc. 142 at 7-8. Though courts must rely on the pleadings alone for 12(b)(6) purposes, courts may under limited circumstances rely on external documents necessarily embraced by pleadings. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) ("documents necessarily embraced by the complaint are not matters outside the pleading") (citations omitted). Plaintiffs' complaint necessarily embraced *Sulik's* complaint, as Plaintiffs based their argument under Count Eleven in part on the substance of *Sulik's* allegations.

Shuler's reporting on his blog." Doc. 212 at ¶ 69. Plaintiffs elaborate the Cowherd eviction crew placed their belongings on the curb or stole them. Doc. 212 at ¶ 54. Plaintiffs allege that they later left on the curb those items not stolen by the Cowherd eviction crew or placed them in Plaintiffs' car or with neighbors. Doc. 212 at ¶ 55. Moving Defendants argue, "Plaintiffs have not argued any facts that support…Moving Defendants were conspiring with each other to deprive Plaintiffs of a constitutional right" Doc. 220 at 14. Moving Defendants persuade.

"To prove a § 1983 conspiracy claim against a particular defendant, the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (citations omitted). Though Plaintiffs appear to allege several overt acts, Plaintiffs' allegations regarding injury and conspiracy remain insufficient. In terms of injury, Plaintiffs allege deputies under Defendant Arnott's command ensured their computer was confiscated during eviction and that this led to Roger Shuler's inability to blog. Elsewhere Plaintiffs elaborate that Cowherd eviction crew members placed their belongings on the curb or stole them. Doc. 212 at ¶ 54. Plaintiffs fail to allege any Moving Defendant seized and took into custody Plaintiffs' computer. Plaintiffs also fail to allege any Moving Defendant prevented Roger Shuler from electronically publishing new content through some means apart from Plaintiffs' computer. Without more, Plaintiffs' claim that removal of physical property, including a computer, from Plaintiffs' residence somehow prevented Roger Shuler from publishing new content, amounts to only a conclusory statement. Plaintiffs also fail to allege Moving Defendants actually interacted amongst themselves or with others in effort to strip from Roger Shuler a constitutionally protected right related to blogging. Plaintiffs' allegation that Defendant Harrison and others reached a meeting of

31

the minds to punish and retaliate against Plaintiffs, also constitutes only a conclusory statement. Plaintiffs acknowledge, "the full extent of the conspiracy is not known at this point." Doc. 212 at ¶ 137. While some level of abstraction is permissible for 12(b)(6) purposes, Plaintiffs must nonetheless plead sufficient facts to give rise to a plausible claim. Moving Defendants' Motion is granted as to Count Twenty-One, which this Court dismisses with prejudice.

## M. Count Twenty-One (labeled Count Twenty in Third Amended Complaint) (Defendants Arnott, Conrad, Harrison, Wade, and Lynn): Conspiracy to Intervene with Civil Rights via 42 USC § 1985

Plaintiffs rely on 42 USC § 1985(3), arguing "conspirators took action to harm the Shulers because of Rogers' practice of his constitutionally protected right to practice journalism…Secondarily, certain conspirators harmed Roger and Carol to force them into homelessness, make them look crazy and incapable of handling their own affairs, forcing them into a conservatorship or guardianship that would greatly limit their rights and further a plan to cheat Roger out of his share of his parents' estate." Doc. 212 at ¶ 139. Elsewhere Plaintiffs allege, "deputies under Defendant Arnott's command ensured that the Shulers' computer was confiscated, making it impossible to blog…The same political forces that terrorized the Shulers in Alabama worked with Missouri connections…to continue terrorism against the Shulers…all driven by a pathological drive to shut down Roger Shuler's reporting on his blog." Doc. 212 at ¶ 69. Moving Defendants argue this Court must dismiss this count, as Plaintiffs have failed to allege a class-based discriminatory animus. Doc. 220 at 14-15. In other words, Moving Defendants' argument focuses on whether discrimination based on alleged First Amendment violations is permissible under § 1985(3), not whether Plaintiffs have alleged sufficient facts to show injury arising from

First Amendment protection. Moving Defendants also argue Plaintiffs fail to allege Moving Defendants reached any sort of agreement. Doc. 220 at 14-15.

The Supreme Court held, "language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). What constitutes "class" for § 1985(3) purposes remains flexible. The Eighth Circuit has held whether a particular group of people is "invidious" is the salient factor. *Shortbull v. Looking Elk*, 677 F.2d 645, 649 (8th Cir. 1982). In other words, whether a characteristic constitutes "class" for § 1985(3) purposes depends whether plaintiffs suffered discrimination because of that characteristic. Courts have held race constitutes class for statutory purposes. *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971). Courts have also held religion constitutes class. *Ward v. Connor*, 657 F.2d 45, 48 (4th Cir. 1981). Contrary to Moving Defendants' claims, courts have held exercising a fundamental right also constitutes class for § 1985 purposes. *Cameron v. Brock,* 473 F.2d 608, 610 (6th Cir. 1973) (§ 1985(3) contemplates first amendment violations); *Glasson v. City of Louisville*, 518 F.2d 899, 901 (6th Cir. 1975) (same holding) (overruled on other grounds). Because Plaintiffs allege general First Amendment violations stemming from Roger Shuler's blogging, Moving Defendants' first argument fails. This is separate from the issue of whether Plaintiffs have alleged sufficient facts to show injury arising from First Amendment violations, discussed in Counts One and Twenty.

Moving Defendants next argue Plaintiffs failed to allege Moving Defendants reached an agreement regarding any alleged First Amendment violations. The Eight Circuit has held § 1985 claims require "'allegations of a conspiracy [be] pleaded with sufficient specificity and factual

33

support to suggest a meeting of the minds directed toward an unconstitutional action.'" *Kelly v. City of Omaha, Neb.*, No. 14-3446, 2016 WL 660117 (8th Cir. Feb. 18, 2016) (citations omitted). Plaintiffs allege vague cooperation between political forces in Alabama and Missouri. Doc. 212 at ¶ 69. Under Count Twenty-One, Plaintiffs allege Defendant Harrison and others reached a meeting of the minds to punish and retaliate against Plaintiffs. Doc. 212 at ¶ 137. These allegations, however, amount simply to a recital of the elements and conclusory statements. Without additional factual allegations, Plaintiffs have failed to sufficiently allege Plaintiffs interacted amongst themselves or with others with the purpose of stripping from Roger Shuler any constitutionally protected right related to blogging. Moving Defendants' Motion is granted as to Count Twenty-One in Plaintiffs' Third Amended Complaint, which is dismissed with prejudice.

**N.  Count Twenty-Two (Labeled Count Twenty-One in Third Amended Complaint) (Defendants Arnott, Conrad, Harrison, Wade, and Lynn): Neglect to Prevent Conspiracy via 42 USC § 1986**

It is unlawful to intentionally or negligently prevent violations of 42 USC § 1985, given awareness of such violations and ability to prevent them. 42 USC § 1986. A successful § 1986 claim requires defendants have actual knowledge of the § 1985 violation. *Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998). Plaintiffs allege Moving Defendants and others knew of the § 1985 violations alleged in Count Twenty-One, but failed to prevent them. Doc. 212 at ¶ 141. Moving Defendants argue Plaintiffs' § 1986 claim requires a valid § 1985 claim, otherwise the § 1986 claim must fail. Moving Defendants argue, because Plaintiffs failed to successfully allege § 1985 violations, their § 1986 allegations must also fail. Moving Defendants persuade.

The plain language of § 1986 makes clear that violations of § 1985 must first be found before successfully alleging failure to prevent the § 1985 violations. As discussed above, Plaintiffs failed to allege Moving Defendants agreed to deprive Plaintiffs of constitutional rights. Because Plaintiffs' § 1985 claims failed, Plaintiffs § 1986 claims also fail. Moving Defendants' Motion is granted as to Count Twenty-Two, which this Court dismisses with prejudice.

O.    **Count Twenty-Three (Labeled Count Twenty-Two in Third Amended Complaint) (Defendant Arnott): Failure to Adequately Hire, Train, and Supervise via 42 USC § 1983.**

Plaintiffs allege Defendant Arnott failed to train and supervise employees under his command. Plaintiffs specifically claim, "Defendant Arnott allowed deputies under his supervision to pursue an eviction that was unlawful on at least 10 grounds and was not even supported by a signed court order or a final judgment in the rent and possession case." Doc. 212 at ¶ 141. Plaintiffs allege no additional facts in support of Count Twenty-Three. Plaintiffs base their allegations in both Missouri state law and § 1983. This Court addressed the Missouri state law claims above. Moving Defendants failed to raise any specific objections to Plaintiffs' Count Twenty-Three § 1983 allegations. Moving Defendants, however, maintain throughout the suggestions in support of their motion, that Plaintiffs have failed to assert any claims implicating constitutional protections. Doc. 220 at 1. Moving Defendants persuade.

A § 1983 failure to supervise or train claim requires Plaintiffs show, "(1) the Sheriff's Department training [or supervision] was inadequate; (2) this failure…"reflects a deliberate and conscious choice", and (3) the alleged deficiency in the training [or supervision] procedures

actually caused [the alleged injury]. *Teasley v. Forler*, 548 F. Supp. 2d 694, 706 (E.D. Mo. 2008) (citations omitted). As discussed under the Official Capacity section, Plaintiffs fail to allege anything whatsoever regarding a conscious choice to inadequately train or supervise. Nor do Plaintiffs allege any facts showing deficiency in training or supervision led to any alleged injuries. Plaintiffs' claims constitute only a threadbare recital of the elements and conclusory statements.

## CONCLUSION

For the foregoing reasons, Moving Defendant's Motion to Dismiss Missouri State Law Claims is **MOOT**. Moving Defendants' Motion to Dismiss Federal Law Claims is **GRANTED**. Moving Defendants' Motion to Compel is **MOOT**. Moving Defendants are dismissed from this action.

**IT IS SO ORDERED.**

Dated: November 3, 2022

                */s/ Douglas Harpool*

                **DOUGLAS HARPOOL**
                **United States District Judge**